**David T. BARD, Commissioner of Banking & Insurance of the State of Vermont, Appellant,**

v.

**CHARLES R. MYERS INSURANCE AGENCY, INC. & Charles R. Myers, Individually, and as President of Charles R. Myers Insurance Agency, Inc., Appellees.**

No. 04–89–00565–CV.

Court of Appeals of Texas, San Antonio.

June 12, 1991.

Camile Glasscock DuBose, Robert M. Smith, Beckmann, Quirk & Fulton, San An-

**254**

tonio, Richard Whitney, Jones, Day, Reavis & Pogue, Cleveland, Ohio, for appellant.

G. Thomas Coghlan, Laura Cavaretta, Lang, Ladon, Green, Coghlan & Fisher, P.C., San Antonio, for appellees.

Before REEVES, C.J., and CHAPA and CARR, JJ.

## ON APPELLANT'S MOTION FOR REHEARING

CHAPA, Justice.

The opinion of this Court issued April 10, 1991 is withdrawn and the following opinion is substituted.

Appellant, David T. Bard, Commissioner of Banking and Insurance of the State of Vermont, as Receiver for Ambassador Insurance Company, instituted suit in Texas against appellee, Charles R. Myers, individually, and as President of Charles R. Myers Insurance Agency, Inc. for the collection of insurance premiums allegedly owed to Ambassador Insurance Company (hereinafter "Ambassador"). A compulsory counterclaim for violations of the Texas Insurance Code, fraud, tortious interference with a contract, breach of a contract, DTPA and unfair competition was filed on behalf of the appellee. At the conclusion of the trial, the jury answered all questions in favor of the appellee and against the appellant. An amended judgment was entered providing that the appellant take nothing and that the appellee recover compensatory and exemplary damages, interest and attorneys' fees from the appellant.

The record reflects that Ambassador was a specialized company, chartered in the state of Vermont in 1965, which wrote excess lines insurance for amusement parks, hospitals, and exotic products manufacturing. Charles R. Myers, through the Charles R. Myers Insurance Agency, Inc., wrote and sold Ambassador's policies to his customers. However, in order to obtain the right to sell the policies, Charles R. Myers and later, Charles R. Myers Insurance Agency, Inc. entered into a correspondent's agreement with Ambassador which outlined each party's rights and obligations.

In November of 1983, Ambassador was placed into receivership in Vermont. In July of 1985, David T. Bard, as receiver for Ambassador, instituted this suit in Texas against Charles R. Myers, individually, as well as Charles R. Myers Insurance Agency, Inc. (hereinafter "Myers") for collection of amounts allegedly due under the correspondent's agreement. On May 8, 1986, Myers filed a compulsory counterclaim against Ambassador in Texas. The Superior Court of Washington County, Vermont entered a Liquidation Order on March 10, 1987, converting the receivership to liquidation and charging Bard and his successors with marshalling Ambassador's assets and paying claims.

The appellant sought to recover, in its Texas lawsuit, $190,774.56 in premiums allegedly owed by the appellee.[1] Myers' counterclaim, however, alleged that Ambassador had breached its contract with the appellee; that Ambassador's actions constituted violations of § 15.05 of the Texas Business and Commerce Code, article 21.-21, §§ 3 and 16 of the Texas Insurance Code; that Ambassador breached its duty of good faith and fair dealing; that Ambassador engaged in fraud and misrepresentation; that Ambassador tortiously interfered with Myers' prospective contracts; and, that Ambassador's fraudulent concealment estopped its assertion of limitations as a defense to said claims.

At trial, the evidence established that Frank B. Hall was an insurance agency in San Antonio, Texas which also placed risks with Ambassador. It was alleged that Frank B. Hall was a fierce competitor of the Charles R. Myers Insurance Agency, Inc. Moreover, it was alleged that in order to deprive the appellee of contractual opportunities, when the appellee would contact Ambassador to obtain rate information for prospective insureds, Ambassador would give the appellee a high quote. The company would then, allegedly, contact Frank B. Hall, notify it of the name and

---

1. Myers calculated that he owed Ambassador $172,504.13.

needs of the potential insured, and give Frank B. Hall a lower price quote on the exact same insurance policy inquired about by the appellee. Frank B. Hall would then, allegedly, contact the prospective insured, relay the lower price quote and write the Ambassador policy for the insured. Although the appellee suspected a conspiracy, he claimed he had no actual knowledge of its existence until 1985. As a result of this conspiracy, it was alleged that the Charles R. Myers Insurance Agency, Inc. lost business and suffered damages in the sum of $279,665.00.

The jury found that Myers did not breach the correspondent's agreement; that Ambassador breached the contract and its duty of good faith and fair dealing to Myers; that Ambassador conspired with Frank B. Hall to restrain trade; that Ambassador tortiously interfered with Myers' relationship with prospective customers; and, that Ambassador's conduct was willful and knowing. Further, the jury found that Ambassador delivered a false statement of its financial condition with intent to deceive; that Ambassador agreed to commit, or took concerted actions to commit, an act of boycott in restraint of trade; and, that Ambassador knowingly represented to Myers that it had benefits or services which it did not have.

Additionally, the jury found that Ambassador misrepresented to Myers that it was financially sound; that it would honor its contractual obligations to Myers and the insureds; and, that it would manage business with Myers in a fair manner. The jury determined that Myers' actual damages were $382,447.91, that Myers' attorneys fees were $50,500.00 [2] and, that Myers should be awarded $1,200,000.00 in punitive damages. Based upon these answers, judgment was entered in favor of Myers.

Appellant, Bard, initially raises fifteen multifarious points of error which we have narrowed down to the following:

1. the trial court erred in failing to give full faith and credit to the Vermont Receivership Order dated November 10, 1983, and the Vermont Liquidation Order dated March 10, 1987;

2. the trial court improperly commingled Ambassador Insurance Company and/or David T. Bard, Commissioner of Banking and Insurance of the State of Vermont, as Liquidator/Receiver for Ambassador Insurance Company, throughout the trial and the charge submitted to the jury, which resulted in an improper charge of the court being submitted;

3. the trial court erred in applying article 21.11 § 2 of the Texas Insurance Code, both in the charge of the court and throughout the case in question, resulting in appellant being awarded only $28,000.00 in earned premiums due the appellant;

4. the trial court erred in failing to properly state the correct definition of misrepresentation as pled by appellee in the charge to the jury, and failed to properly inquire of the jury as to the underlying elements for punitive damages based on misrepresentation;

5. the trial court erred in awarding actual and punitive damages as these damages are barred by various statutes of limitations; and,

6. the evidence was legally and factually insufficient to support the following findings by the trial court:

a). that appellee was entitled to out-of-pocket expenses and uncollected accounts receivable, as these damages are barred and are not recoverable pursuant to Texas statutory law, and that Ambassador, rather than the appellee, was liable for uncollected accounts receivable pursuant to the January 7, 1981 correspondent's agreement entered into between appellee and Ambassador;

b). that the appellee was entitled to punitive damages, as it was not established that the actions were committed knowingly or with malice, and further,

---

**2.** The trial court reduced the jury's award of $50,500.00 and instead, awarded the appellee $12,500.00 in attorney's fees; however, as appellee does not raise this issue, we need not address it.

punitive damages in the amount of 1.2 million awarded to appellee are violative of public policy, the due process clause of the United States Constitution, and do not serve the punishment and deterrent purposes underlying punitive damages awards;

c). that appellee was entitled to attorneys' fees;

d). and lastly, that there was a conspiracy between Ambassador and Frank B. Hall, as the trial court failed to inquire of the jury as to the underlying elements of a conspiracy making recovery thereunder impossible and/or improper.

Appellant initially argues that the Vermont Order in issue specifically prohibits the assertion of any claim against Ambassador in liquidation, or the Commissioner as Receiver, by any means other than by presenting such a claim in the liquidation proceedings in Vermont.[3] Accordingly, appellant contends that appellee's counterclaim, filed on May 8, 1986, was enjoined by Order of the Vermont Superior Court under the doctrine of full faith and credit. U.S. Const. art. IV, § 1; *see also Starzl v. Starzl,* 686 S.W.2d 203, 205 (Tex.App.— Dallas 1984, no writ).

■ Article IV, § 1 requires that each state give full faith and credit to the public acts, records and judicial proceedings of every other state. *Starzl,* 686 S.W.2d at 205. A judgment rendered by a court of another state and properly proven is entitled to full recognition and the same credit in this state as it would receive in the state where rendered, provided, however, that it has been proven that the judgment is a valid, final and subsisting judgment. *Id.* Further, "[a] final judgment is one disposing of all issues and parties in the case." *Baker v. Hansen,* 679 S.W.2d 480, 481 (Tex.1984), citing *Schlipf v. Exxon,* 644 S.W.2d 453 (Tex.1982).

**3.** The Order states that "[n]o action at law or equity shall be brought against Ambassador or the Liquidator, or any employee, agent or representative of the Liquidator, *whether in this state or elsewhere,* nor shall any such existing actions

■ In the present case, the Order dated November 10, 1983 states that *"[t]he court shall retain jurisdiction of this proceeding for the purpose of granting such other relief as may be necessary."* Moreover, the liquidation Order, dated March 10, 1987 provides that:

When all assets that can be economically collected and distributed have been collected and distributed under this Order, *the Liquidator shall apply to the Court for a final discharge.* The Court *may* grant the discharge and *make any other orders,* including an order to transfer any remaining funds that are uneconomic to distribute, as it deems appropriate.... (Emphasis added.)

....

*After the liquidation proceeding has been terminated* and the Liquidator discharged, the Commissioner or other interested party *may at any time petition this Court to reopen* the proceedings for good cause, including the discovery of additional assets. If the Court is satisfied that there is justification for reopening, it shall so order.... (Emphasis added.)

....

To the extent that the rights and claims of such parties were not heretofore finally adjudicated by this Court's Judgment of September 4, 1984, this Order shall constitute a final adjudication of the rights and claims of those parties who have heretofore been allowed intervention in these proceedings, *to include Ambassador Insurance Company, Ambassador Group, Inc. and the Intervening Hospitals. The claims of such parties are hereby dismissed with prejudice....* (Emphasis added.)

....

*This Court shall retain jurisdiction for all purposes necessary to effectuate and enforce this Order....* (Emphasis added.)

be maintained or further presented after issuance of this Order, *nor shall any counterclaim or set off be asserted in any action brought by or on behalf of the Liquidator, whether in this state or elsewhere....*" (Emphasis added.)

The March 10th Order also required "*advance approval by the Court . . . in any case in which the Liquidator seeks to abandon the prosecution of any claim, or to settle any claim, which the Liquidator has asserted to have a value in excess of One Million Dollars ($1,000,000). . . .*" (Emphasis added.)

Clearly, the Vermont Orders, which were subject to modification under the laws of the rendering state, allowed further action by the receiver under the court's supervision, as well as its continuing jurisdiction, and are "[a] foreign judgment which purports to retain jurisdiction to determine a future status not then in existence, or expressed otherwise, over a cause of action purely in futuro, [which] is not protected by the 'full faith and credit' clause of the Federal Constitution." *Goldsmith v. Salkey*, 131 Tex. 139, 112 S.W.2d 165, 168–69 (1938). This order fails to dispose of all parties and all issues and is therefore, not final. *Baker*, 679 S.W.2d at 481. Texas law has long held that an interlocutory judgment is not entitled to full faith and credit. *State of Washington v. Williams*, 584 S.W.2d 260, 261 (Tex.1979); *Goldsmith*, 112 S.W.2d at 168–69; *Starzl*, 686 S.W.2d at 205. Accordingly, we decline to apply the full faith and credit clause in the present case.

■ Notwithstanding the lack of finality of the Vermont Liquidation Orders, we fail to see how the Vermont Orders can preclude an appellee, who has been sued in Texas, from filing a compulsory counterclaim in that same Texas court. Indeed, the provision at issue is, quintessentially, an injunction against litigation. Injunctions against litigation are generally not accorded full faith and credit when they do not rest on a decision on the merits of the case. *See* R. LEFLAR, L. McDOUGAL, & R. FELIX, AMERICAN CONFLICTS LAW § 83, at 246–48 (4th Ed.1986); E. SCOLES & P. HAY, CONFLICT OF LAWS § 24.21, at 945 (1982); *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 103 comment b, at 314 (1971).

The text of section 103 of the Restatement is as follows:

A judgment rendered in one State of the United States need not be recognized or enforced in a sister State if such recognition or enforcement is not required by the national policy of full faith and credit because it would involve *an improper interference with important interests of the sister State.*

(Emphasis added.)

In the present case, appellee unquestionably had a right, as a Texas defendant, to defend himself, as well as an obligation under Texas law, to file a compulsory counterclaim seeking to enforce provisions of the Texas Insurance Code and the Business and Commerce Code. *CLS Associates, Ltd. v. AB*, 762 S.W.2d 221, 224 (Tex. App.—Dallas 1988, no writ); *Bailey v. Travis*, 622 S.W.2d 143, 144 (Tex.Civ.App.—Eastland 1981, writ ref'd n.r.e.); *Connell v. Spires*, 264 S.W.2d 458, 459 (Tex.Civ. App.—Eastland 1954, no writ). This is especially true in view of the fact that the appellant initiated the lawsuit in a Texas court, thereby availing itself of Texas jurisdiction; moreover, appellee's counterclaim sought to enforce provisions of Texas law. *Connell*, 264 S.W.2d at 459. Appellee was, therefore, entitled to defend himself and present his counterclaim in the same Texas court.

■ Appellant also argues that comity demands that Texas courts abide by the injunction of the Vermont court. Nevertheless, it is undisputed that comity is not a matter of right but rather, a matter of convenience which vests in the sound discretion of the tribunal of the forum. *Nowell v. Nowell*, 408 S.W.2d 550, 553 (Tex. Civ.App.—Dallas 1966, writ dism'd), *cert. denied*, 389 U.S. 847, 88 S.Ct. 53, 19 L.Ed.2d 116 (1967); *New Process Steel Corp. v. Steel Corp. of Texas*, 638 S.W.2d 522, 524 (Tex.App.—Houston [1st Dist.] 1982, no writ). In view of the appellee's rights to present his counterclaim, we find that the trial judge did not abuse his discretion in refusing to apply the doctrine of full faith and credit or the doctrine of comity.

Appellant's first point is overruled.

In appellant's second point of error, appellant argues that there was a substantial variance as to the parties named in the pleadings, submitted in the charge, and stated in the judgment. Appellant contends that Bard was named in his capacity as the Commissioner and not solely in his capacity as Liquidator/Receiver for Ambassador. Nevertheless, the record reflects that David T. Bard, *as Commissioner of Banking and Insurance for the State of Vermont*, and/or his successor in office, was appointed the Liquidator/Receiver for Ambassador Insurance Company, Inc., and as such, was charged with the authority to represent the rights of creditors, and to defend, prosecute or settle suits against Ambassador, including the suit filed against Charles R. Myers.

In view of these facts, we fail to see how naming Bard, as Commissioner, rather than Receiver, constitutes error; further, it is apparent that appellant has failed to show how the error complained of amounts to "such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case...." TEX.R.APP.P. 81(b)(1); *See Hamblet v. Coveney,* 714 S.W.2d 126, 129 (Tex.App.—Houston [1st Dist] 1986, writ ref'd n.r.e.). Accordingly, we reject appellant's second point of error.

In appellant's next point of error, appellant asserts that the trial court improperly applied article 21.11–2 of the Texas Insurance Code, both in the charge of the court and throughout the case, which resulted in a jury finding in appellant's favor for only $28,000.00 in earned premiums. TEX.INS.CODE ANN. art. 21.11–2 (Vernon 1981). However, appellant has failed to direct this court to those parts of the record wherein the trial court erred in applying this article "throughout the case". TEX.R.APP.P. 74. Accordingly, we will limit our discussion solely to appellant's complaint that the trial court erred in ap-plying article 21.11–2 in the charge, which was properly preserved.

Article 21.11–2 of the Insurance Code provides as follows:

Every agency contract entered into on and after the effective date of this Act by an insurance company writing fire and casualty insurance in Texas shall contain, or shall be construed to contain, the following provision:

Notwithstanding any other provision of this contract, the obligation of the agent to remit written premiums to the company shall be changed *upon the commencement of delinquency proceedings* [4] *as defined in Article 21.28, Insurance Code of Texas of 1951,* as amended. [Footnote added.] Subsequent to the commencement of delinquency proceedings, the obligation of the agent to remit premiums shall be confined to premiums earned prior to the commencement of such proceedings. The agent shall not owe or remit to the company or to the Liquidator–Receiver any premiums that are unearned as of the date of the commencement of such delinquency proceedings, and any such unearned premiums in the possession of the agent on such date shall be returned promptly by the agent to the insured who paid them or, with the approval of the insured, be used to purchase new coverage for the insured with a different insurer. (Emphasis added.)

Appellant contends that this provision applies only to delinquency proceedings initiated in the State of Texas, and therefore, the provision is not applicable in the present case.

We concur with the appellant's rationale due to the specific language of this article. Having resolved that the trial court erred in applying this article in the charge, we must now decide whether "the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause

---

4. "Delinquency proceeding" is defined in this section as "any proceeding commenced in any court *of this State* against an insured for the purpose of liquidating, rehabilitating, reorganiz-ing or conserving such insurer." TEX.INS. CODE art. 21.28 (Vernon 1981) (emphasis added).

rendition of an improper judgment in the case." TEX.R.APP.P. 81(b)(1).

■ Texas law maintains that a contracting party, who fails to perform his obligation under the agreement, cannot recover on the contract. *Joseph v. PPG Industries, Inc.*, 674 S.W.2d 862, 867 (Tex.App.—Austin 1984, writ ref'd n.r.e.). In the case at hand, the jury clearly found that Ambassador had breached the correspondent's contract at issue; moreover, there was ample evidence to support this jury finding. Consequently, this jury finding alone would justify not granting Ambassador any damages under the contract. We fail to see how the appellant has been harmed by the trial court's error in applying article 21.11 to the charge, in view of the fact that Ambassador breached the contract, and thus, was not entitled to recover upon the contract under Texas case law.

Appellant's point of error is rejected.

■ Appellant next argues that the trial court erred in awarding actual and punitive damages in response to jury instructions and special issues 2–5, 8, 11 and 12, as the charge of the court failed to properly state the definition of misrepresentation as pled by appellee's answer and counterclaim, and failed to properly inquire of the jury as to the underlying elements for misrepresentation under common law.

The regulations promulgated by the State Board of Insurance and assembled within the Texas Administrative Code define and state the standards necessary to prohibit deceptive acts or deceptive practices by insurers, insurance agents and other persons in their conduct of the business of insurance. Insurance, 28 TEX.ADMIN.CODE § 21.1 (Hart Oct. 10, 1988). Section 21.4 of this code defines misrepresentation as follows:

(1) any untrue statement of a material fact; or

(2) any omission to state a material fact necessary to make the statements made (considered in the light of the

circumstances under which they are made) not misleading; or

(3) the making of any statement in such manner or order as to mislead a reasonably prudent person to a false conclusion of a material fact; or

(4) any material misstatement of law; or

(5) any failure to disclose any matter required by law to be disclosed, including failure to make disclosure in accordance with the provisions of these sections and other applicable rules of the State Board of Insurance.

The Texas Pattern Jury Charges defines the making of a misrepresentation *relating to insurance* in a substantially similar manner. STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 102.19 (1990). Moreover, the comment to § 102.19 states that "[t]he instruction of misrepresentation is from the term's definition in the order." [5] Clearly, both the statute and the Texas Pattern Jury Charges do not rely upon the common law definition of misrepresentation. Instead, the statute itself sets forth the necessary elements for a misrepresentation cause of action in relation to insurance. Thus, we fail to see how adherence to the applicable language of both the Texas Administrative Code and the Texas Pattern Jury Charges, which relate specifically to insurance, amounts to an abuse of discretion.

Moreover, it is clear from the record that although the appellant objected to this charge, the objection did not distinctly point out the objectionable matter and the grounds of the objection. TEX.R.CIV.P. 274. Procedural rule 274 states that "[w]hen the complaining party's objection, or requested question, definition, or instruction is, in the opinion of the appellate court, obscured or concealed by voluminous unfounded objections, minute differentiations or numerous unnecessary requests, such objection or request shall be untenable."

---

5. Board Order No. 41060 "which prohibits engaging in 'any trade practice that is a misrepresentation of an insurance policy ... an unfair method of competition, or ... an unfair or deceptive act or practice as defined by the ... Insurance Code.'" STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES 102.19 (comment following text).

We find that appellant's objection to the charge in question was untenable and accordingly, reject appellant's points dealing with this issue.

■ Appellant also contends that the trial court erred in awarding actual and punitive damages because Vermont statutory law provides an exclusive remedy for appellee and further, these damages are barred by various statutes of limitations. Having previously resolved the issue regarding appellee's right to file the counterclaim, we see no reason to determine whether the awards of actual and punitive damages were improper because Vermont law allegedly provided an exclusive remedy. Instead, we will limit our discussion to whether the actual and punitive damages are barred by statutes of limitations.

Section 16(d) of the Insurance Code requires that:

All actions under this Article must be commenced *within two years after the date on which the unfair method of competition or unfair or deceptive act or practice occurred or within two years after the person bringing the action discovered or, in the exercise of reasonable diligence, should have discovered* the occurrence of the unfair method of competition or unfair or deceptive act or practice. The *period of limitation provided in this section may be extended for a period of 180 days if the person bringing the action proves that the failure to timely commence the action was caused by the defendant's engaging in conduct solely calculated to induce the plaintiff to refrain from or postpone the commencement of the action.*

TEX.INS.CODE ANN. art. 21.21 § 16(d) (Vernon Supp.1990) (emphasis added).

Further, the Business and Commerce Code, and more specifically, the Deceptive Trade Practices Act, likewise requires that all actions brought under this subchapter be commenced within two years after the date that the act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the act or practice. TEX.BUS. & COM.CODE ANN. § 17.565 (Vernon 1989).

Moreover, § 15.25 of the same code maintains the following:

*Any suit to recover damages under Section 15.21* [Suits by Injured Persons or Governmental Entities] *of this Act is barred unless filed within four years after the cause of action accrued* or within one year after the conclusion of any action brought by the state under Section 15.20 [Civil Suits by the State] or 15.22 [Criminal Suits] of this Act based in whole or in part on the same conduct, whichever is longer. For the purpose of this subsection, a cause of action for a continuing violation is considered to accrue at any and all times during the period of violation.

TEX.BUS. & COM.CODE ANN. § 15.25 (Vernon 1987) (emphasis added).

Additionally, § 16.068 of the Civil Practice and Remedies Code states, in pertinent part, the following:

If a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, *a subsequent amendment or supplement to the pleading* that changes the facts or grounds of liability or defense *is not subject to a plea of limitation* unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.

TEX.CIV.PRAC. & REM.CODE ANN. § 16.068 (Vernon 1986) (emphasis added).

Appellant argues that the actions complained of by appellee in his counterclaim were known to appellee in approximately 1981, however, appellee's original counterclaim was not filed until May 8, 1986, well after the various statutes of limitations had run.[6]

---

6. Appellant alleges that other causes of action known to appellee in 1981 were raised for the first time when appellee filed his First Amended Original Counterclaim and his Fourth Amended Original Counterclaim in 1989.

Nevertheless, the jury found in response to several questions, and based on evidence presented at trial, that Ambassador's acts or conduct occurred or continued to occur on or after May 8, 1982; additionally, the jury found that the appellee did not discover, or in the exercise of reasonable diligence could not have discovered, the acts or omissions of Ambassador more than two years before appellee's counterclaim was filed. The jury, as the sole judge of the witnesses' credibility and the weight to be given to their testimony, was surely entitled to conclude that the appellee had brought his counterclaim within the statutes of limitations. *Jones v. Tarrant Util. Co.*, 638 S.W.2d 862, 866 (Tex.1982); *Leyva v. Pacheco*, 163 Tex. 638, 358 S.W.2d 547, 549 (1962); *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 796 (1951). Moreover, because the acts committed were by their very nature covert, we do not see how these findings are so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986). Thus, we see no merit to appellant's contentions and refuse this point of error.

Appellant next contends that the evidence was legally and factually insufficient to support the following: out-of-pocket expenses and uncollected accounts receivable; punitive damages; attorneys' fees; and, damages awarded as a result of a finding of a conspiracy between Ambassador and Frank B. Hall. We will address each of these contentions separately.

■■■■■ We note at the outset, however, that in reviewing a "no evidence" or legal sufficiency point, only the evidence favorable to the decision of the trier of fact may be considered; all evidence and inferences to the contrary must be disregarded. *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex.1988); *Garza v. Alviar*, 395 S.W.2d 821, 824 (Tex.1965). In considering a factual sufficiency point, we assess all

the evidence and reverse for a new trial only if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool*, 715 S.W.2d at 635; *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (great weight and preponderance); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

■■■■ The appellant initially alleges that the evidence is legally and factually insufficient to support an award of out-of-pocket expenses, which were incurred subsequent to the initiation of the insolvency proceedings on behalf of Ambassador, and uncollected accounts receivable, as these are elements of damages which are barred and are not recoverable pursuant to Texas statutory law; moreover, appellant argues that the trial court erred in offsetting amounts due to Ambassador by the appellee against out-of-pocket expenses.[7]

In a related point, appellant also asserts that the evidence was legally and factually insufficient to support the trial court's finding that Ambassador, rather than the appellee, was liable for the uncollected accounts receivable pursuant to the January 7, 1981 correspondent's agreement entered into between appellee and Ambassador.

The record reflects that Myers paid approximately $47,992.16 in claims and attorneys' fees on insureds' claims which Ambassador refused to honor. Moreover, there was testimony that these out-of-pocket expenses were incurred as a result of Ambassador's failure to provide protection to its insureds when the insureds began to look to Myers for payment of claims and defenses. Additionally, there was testimony that Myers had to write off approximately $54,790.14 in accounts receivable on insureds' accounts, after Myers' clients stopped making payments on their accounts because of Ambassador's overall financial condition and failure to pay claims. Further, there was evidence, as well as a

---

7. Appellants are charged with the responsibility of presenting a record which supports their complaints. TEX.R.APP.P. 50(d). The record reflects that the trial judge did not offset anything; additionally, the amended judgment reveals that a take nothing judgment was entered against the appellant, and a judgment for the appellee was entered in accordance with the jury's findings, except with respect to appellee's attorneys' fees which were reduced. Therefore, nothing has been preserved for review. TEX. R.APP.P. 50(d).

jury finding, that Ambassador breached the correspondent's agreement between the appellee and the appellant.

Because these findings are not so against the great weight and preponderance of the evidence as to be manifestly unjust, we find the evidence was sufficient to support these findings, and therefore, refuse appellant's complaint. *Pool*, 715 S.W.2d at 635.

■ Appellant also argues that the evidence was legally and factually insufficient to support an award of punitive damages in response to special issues 4(A), 4(C), 5, 8 and 11, as these special issues required additional instructions or definitions as to whether Ambassador's actions were committed "knowingly" as required by the Insurance Code. TEX.INS.CODE ANN. art. 21.21 § 16(b)(1) (Vernon 1991). Article 21.21 § 16(b)(1) states the following:

> In a suit filed under this section, any plaintiff who prevails may obtain: (1) the amount of actual damages plus court costs and reasonable and necessary attorneys' fees. *If the trier of fact finds that the defendant knowingly committed the acts complained of, the court shall award, in addition, two times the amount of actual damages....* (Emphasis added.)

The record reflects that the definition of "knowingly" which was submitted was as follows: "actual awareness of the falsity, deceptions, or unfairness of the act or practice giving rise to the claim, and actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness." Moreover, the jury, as the factfinder, clearly found that Ambassador knowingly committed the acts complained of in response to the following question:

> Do you find from a preponderance of the evidence that in connection with its dealings with Myers, Ambassador did any of the following which were a producing cause of damage to Myers?
>
> Answer "Yes" or "No".
>
> B. Knowingly representing to Myers that its insurance services had benefits

and/or characteristics which they did not have?

[We, the Jury, answer: "Yes"]

However, both the jury findings and the judgment reveal that the punitive damages awarded were not awarded by the court pursuant to art. 21.21 § 16(b)(1). Instead, the punitive damages were awarded "as an example to others and as a penalty or by way of punishment or as compensation for the inconvenience and expense of litigation...." Thus, no additional instruction was necessary. Appellant's point of error is overruled.

■ Appellant also contends that the evidence was legally and factually insufficient to support an award of punitive damages in responses to jury instructions and special issues 2(D), 3(C), 8 and 11 as the element of "malice" necessary to support an award of punitive damages for tortious interference with a contract was neither present nor inquired of the jury.

■ The trial court has considerable discretion in determining what instructions, if any, are necessary and proper in submitting issues to the jury. *Mobil Chem. Co. v. Bell*, 517 S.W.2d 245, 256 (Tex.1974); *Hamblet*, 714 S.W.2d at 129. There is no abuse of discretion absent a showing that appellant suffered a denial of rights such as was reasonably calculated to cause and probably did cause rendition of an improper verdict in the case. *Hamblet*, 714 S.W.2d at 129; *Steinberger v. Archer County*, 621 S.W.2d 838, 841 (Tex.App.—Fort Worth 1981, no writ).

In the present case, the jury was instructed as follows:

> You are instructed that an insurance company tortiously interferes with a prospective contract between its agent and a prospective insured when:
>
> 1. There is a reasonable probability that the agent and prospective insured would enter into a contractual relationship; and
>
> 2. The insurance company acts maliciously by intentionally and willfully preventing the relationship from occurring with the purpose of harming the agent; and

3. The insurance company was not privileged or justified; and

4. Actual harm or damage occurred as a result of the interference.

Additionally, the jury was asked the following:

Do you find from a preponderance of the evidence that such acts or conduct of Ambassador were willful?

Answer "Yes" or "No".

C. In tortiously interfering with Myers' relationship with their prospective customers?

[We, the Jury, answer: "Yes"]

The jury instruction, as well as the question submitted, sufficiently inquired into the elements of malice. *Levine v. First Nat'l Bank of Eagle Pass*, 706 S.W.2d 749, 751 (Tex.App.—San Antonio), *rev'd on other grounds*, 721 S.W.2d 287 (Tex.1986); *See also Light v. Transport Ins. Co.*, 469 S.W.2d 433, 439–40 (Tex.Civ.App.—Tyler 1971, writ ref'd n.r.e.). Moreover, there was evidence that Ambassador intentionally and willfully prevented the contractual relationship from occurring with the purpose of harming the agent. Thus, there was sufficient evidence to establish the existence of malice. We reject this point of error.

■ Appellant also asserts that the evidence was legally and factually insufficient to support the award of punitive damages as said damages are in violation of public policy, the due process clause of the United States Constitution and further, they do not serve the punishment and deterrent purposes underlying punitive damages award.

However, in view of the recent decision by the United States Supreme Court which rejected a similar argument, as well as the fact that under both the Insurance Code and the Business and Commerce Code, the appellee would have been entitled to a similar amount, we find that the punitive damages awarded do not violate public policy or the due process clause. *Pacific Mut. Life Ins. Co. v. Haslip*, —— U.S. ——, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991). Additionally, to preclude punitive damages in instances where the wrongdoer is in receivership or suffering from financial hardship, would result in condoning, and perhaps encouraging, wrongful actions by an unstable or insolvent company. We feel the better approach is to deter the wrongful act, notwithstanding any transfers of the claim, or the difficulty and/or inability to collect on the judgment. *See Texaco, Inc. v. Pennzoil, Co.*, 729 S.W.2d 768, 865 (Tex.App.—Houston [1st Dist.] 1987), *cert. dism'd*, 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988) (where the Court of Appeals refused to set aside or order a remittitur "because of the adverse economic impact it would have").

Further, the appellant alleges that the trial court erred in rendering judgment for the appellee for attorneys' fees because the evidence was factually and legally insufficient to support such an award.

■ In determining the reasonableness of attorneys' fees, the factfinders are entitled to consider numerous factors such as "1) the time and labor involved; 2) the nature and complexities of the case; 3) the amount of money or the value of the property or interest involved; 4) the extent of the responsibilities assumed by the attorney; 5) whether other employment is lost by the attorney because of the undertaking; 6) the benefits resulting to the client from the services; 7) the contingency or certainty of compensation; and 8) whether the employment is casual or for an established or constant client." *City of Fort Worth v. Groves*, 746 S.W.2d 907, 918 (Tex. App.—Fort Worth 1988, no writ).

■ In the case at hand, the jury found, after hearing testimony from appellant's expert, Ms. Jane Bockus, that the appellee incurred $50,500.00 in attorneys' fees; nevertheless, the trial judge subsequently awarded appellee only $12,500.00 in attorneys' fees.[8] We find that, in view of the nature and complexity of the case, as well

---

8. Appellee does not assert that the trial court erred in reducing the amount awarded by the jury for attorneys' fees; therefore, we need not address this point. Further, the reduction cannot possibly be harmful to the appellant. TEX. R.APP.P. 81.

as the fact that the jury is the sole judge of the credibility and the weight to be given to a witness's testimony, the sum awarded for attorneys' fees was reasonable and within the province of the jury. *Jones,* 638 S.W.2d at 866; *Leyva,* 358 S.W.2d at 549; *Benoit,* 239 S.W.2d at 796. Therefore, the reduced amount awarded by the court in the judgment is certainly reasonable. We reject appellant's point of error dealing with attorneys' fees.

■■■ Lastly, appellant contends that the evidence was legally and factually insufficient to establish the existence of a conspiracy between Ambassador and Frank B. Hall and additionally, that the trial court failed to inquire of the jury as to the underlying elements of a conspiracy making recovery thereunder impossible and/or improper.

Mr. David Garret, a former Frank B. Hall employee, testified that the relationship between the Myers' agency and Hall was one of "extremely hostile competition, down and dirty." The record also reflects that both agencies were trying to place business with Ambassador when Mr. Duke Smith, a Hall employee, made arrangements with certain principals at Ambassador to be advised of when Myers was attempting to place business with Ambassador so that Hall could block Myers from obtaining a quote by telling Ambassador that it was working on the risk. Under this scheme, any time Myers would contact Ambassador, Hall would get a signal by telex or letter from Ambassador and Hall would then make its move to block Myers. Various exhibits, comprising of telexes evidencing Ambassador's alleged conspiracy to block Myers' from placing business with Ambassador, were admitted into evidence. In Garrett's expert opinion, the identity of Myers' potential insureds was confidential and Ambassador's unilateral disclosure of this information to a competitor was unethical and outside industry custom.

In view of the standards of review previously cited, we find that the record is replete with testimony which is more than sufficient to support a jury's finding that a conspiracy between Ambassador and Hall

did in fact exist. *Davis,* 752 S.W.2d at 522; *Pool,* 715 S.W.2d at 635; *Cain,* 709 S.W.2d at 176 (great weight and preponderance); *Garza,* 395 S.W.2d at 824; *In re King's Estate,* 244 S.W.2d at 661.

■■■ Appellant further alleges, however, that the trial court failed to inquire of the jury as to the underlying elements of a conspiracy.

Section 15.05 of the Texas Business and Commerce Code (Vernon 1987), the applicable statute, merely states the following: *"[e]very contract, combination, or conspiracy in restraint of trade or commerce is unlawful."* (Emphasis added.) Although § 15.03 and § 15.10 of this act both set forth various definitions, the term "conspiracy" is not defined. TEX.BUS. & COM.CODE § 15.03, § 15.10 (Vernon 1987).

In the present case, question 2(B), which was presented to the jury, stated:

Do you find from a preponderance of the evidence that in connection with its dealings with Myers, Ambassador did any of the following which proximately caused injury or damage to Myers:

Answer "Yes" or "No" as to each.

B. *Combined or conspired with Frank B. Hall to restrain trade with Myers?*

[We, the Jury, answer: "Yes"]

■■■ It is apparent that the trial court's conspiracy issue merely tracks the language of the statute upon which the appellee's claim is based. Further, it is well settled that terms of ordinary meaning need not be defined for the jury. *Miller v. Watson,* 257 S.W.2d 839, 841 (Tex.Civ. App.—Dallas 1953, writ ref'd n.r.e.). Moreover, as previously noted, the trial court has considerable discretion in determining what instructions, if any, are necessary and proper in submitting issues to the jury. *Mobil Chem. Co.,* 517 S.W.2d at 256; *Hamblet,* 714 S.W.2d at 129; *Steinberger,* 621 S.W.2d at 841.

Accordingly, we find that the trial court did not commit reversible error in submitting the above question without further instruction or definition.

Finally, in appellee's cross-point, appellee urges this court to assess the cost of the unnecessary or useless portions of the transcript against appellant. However, because several of appellant's points of error are based on legal and factual insufficiency, the entire record should be before this Court so that we may consider all matters. *Click v. Collins*, 273 S.W.2d 90, 93 (Tex. Civ.App.—Galveston 1954, writ ref'd n.r.e.). We, accordingly, reject appellee's counterpoint.

The judgment is affirmed.