NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH,
PENNSYLVANIA, Appellant,

v.

Justo L. DOMINGUEZ, Jr., Appellee,

No. 08–89–00202–CV.

Court of Appeals of Texas,
El Paso.

June 13, 1990.

Rehearing Overruled July 11, 1990.

R. Brent Cooper, Cowles & Thompson, Dallas, for appellant.

Ruff Ahders, Odessa, Larry Zinn, San Antonio, for appellee.

Before OSBORNE, C.J., and WOODARD and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

The opinion issued on February 28, 1990 is withdrawn and the following is substituted.

This is an appeal from a judgment based upon a jury verdict, awarding $322,988.36 in compensatory and exemplary damages to Appellee for breach of Appellant's duty of good faith and fair dealing in connection with a prior worker's compensation claim. We affirm in part and reverse and render in part.

The Appellee, Justo L. Dominguez, Jr., had been an employee with Petty–Ray Geophysical Company for eleven years when he called in sick on February 27, 1985. Based on information given to the employer, Dominguez was placed on long-term sick leave from that date until August 26, 1985, when his then doctor released him to return to work. During that period, he was paid $200.00 to $300.00 every two weeks in sick leave benefits. Dominguez returned to active work status early in September and continued to work until November 28, 1985, when he was terminated for reasons unrelated to the subsequent worker's compensation action. Thereafter, on January 27, 1986, Dominguez filed a compensation claim with the Industrial Accident Board for "repetitious, traumatic injury to his back and body as whole[,]" February 27, 1985 being given as the date he first knew that the disease was work related. The investigation of the compensation carrier, National Union Fire Insurance Company of Pittsburgh, Pennsylvania, Appellant herein, resulted in its filing with the Board a controversion of the right to compensation on the grounds that Dominguez (1) never reported an on-the-job injury to his employer, and (2) did not report the injury within thirty days. At the Board hearing, Appellant made a "nuisance" offer of $1,500.00, immediately rejected by Dominguez. From the Board award of $6,559.48, Dominguez gave notice of appeal and filed suit.

After jury selection but prior to putting on evidence, the parties settled the compensation case for $28,000.00, the agreed judgment, approved as to form and substance by Dominguez and his attorney, reciting the following standard settlement language:

The Parties agree that this suit involves questions as to the occurrence of an accident, the liability of the Defendant to pay benefits of any kind under the Workers' Compensation Act, the extent of Plaintiff's injuries and resulting incapacities and the probability of need for future medical services, and other questions; and all such issues are disputed, indefinite, uncertain, and incapable of being exactly established and determined.

On the same day the agreed judgment was signed by the judge, Dominguez filed the present bad faith action, alleging that the insurance carrier "had no reasonable basis for denying or delaying payment of benefits under the ... policy."

██ Insurers owe a duty of good faith and fair dealing to their insureds. *Arnold v. National County Mutual Fire Insur-*

*ance Co.*, 725 S.W.2d 165, 167 (Tex.1987). In order to prove a breach of this duty, the claimant must establish (1) an absence of a reasonable basis for denying or delaying payment and (2) the insurer knew or should have known that there was no reasonable basis for the denial or delay. *Aranda v. Insurance Co. of North America*, 748 S.W.2d 210 (Tex.1988). In the instant case, the instructions in the jury charge track the *Aranda* test.

■ In its first point of error, the Appellant essentially raises a "no evidence" challenge to the jury finding of no reasonable basis for the Appellant's denial or delay in payment of the claim, i.e., its failure to act in good faith. In its fifth point, Appellant brings a factual sufficiency challenge to the same jury finding. When reviewing a "no evidence" challenge, the appellate court must consider only the evidence and reasonable inferences in the light most favorable to support the jury verdict, disregarding all evidence and inferences to the contrary. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987). If there is more than a scintilla of evidence to support the finding, the no evidence challenge fails. *Kindred v. Con/Chem., Inc.*, 650 S.W.2d 61, 63 (Tex.1983). When faced with a factual insufficiency point, the court must first examine and consider all of the evidence, *Lofton v. Texas Brine Corporation*, 720 S.W.2d 804, 805 (Tex.1986); and, after so considering and weighing all of the evidence, the court should set aside the finding only if it is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). Since the appellate court is not a fact finder, it may not pass upon the credibility of the witnesses or substitute its judgment for that of the jury, even if there is conflicting evidence upon which a different verdict could have been reached. *Texas Employers Insurance Association v. Alcantara*, 764 S.W.2d 865, 868 (Tex.App.—Texarkana 1989, no writ).

During the trial, Dominguez testified that he was returning to his home for the weekend from a job in Oklahoma when his left foot started hurting and swelling up. His back was also hurting. He called his supervisor, Joe Middleton, on the following Monday or Tuesday and told him about his back and foot problems, which he told Middleton were the result of his work as a vibroseis operator. Middleton told him to go see a doctor. Dominguez testified at length that no benefits were paid until the settlement was reached nearly three and a half years after the date he reported in sick, although he did admit that he received long-term sick leave pay for most of the period he was unable to work in 1985.

Middleton agreed that Dominguez went home to Pecos for the weekend and called him the first part of the following week to report that his toe was swollen and he could not walk. He testified that Dominguez did not indicate in any way that he had hurt himself on the job and that he was fine when he left the job for the weekend. Middleton testified that at some time after he had been off work, he called in several times inquiring as to when his "comp" would be started because he needed to get some money coming in so he could pay some bills. Middleton denied ever telling Appellant's claims representative that Dominguez had reported an on-the-job injury. Other than Dominguez' testimony, there was no record or testimony of any injury or complaint of a swollen toe or foot or of back pain on the job.

Dominguez went first to a chiropractor, Dr. Zea, in Pecos, and then in May 1985, he was referred to an orthopedic specialist in El Paso, Dr. Palafox. In August, his employer sent him to a physician in Odessa, Dr. Driscoll. Doctors' reports and claim forms were filled out and submitted to Petty–Ray and Aetna, its disability insurer, but not to Appellant. Without exception, up to the time Dominguez made formal claim for compensation, all of the forms and reports indicated that Dominguez' physical complaints or injuries were not job related, the reasonable inference being that this information was given to the doctors' offices by Dominguez himself. He never raised any question about receiving sick leave payments rather than workers' compensation benefits. On direct examination,

Dominguez stated he knew that Appellant, not Aetna, was Petty–Ray's workers' compensation carrier.

As late as February 19, 1986, well after he first employed counsel, Dominguez signed an Aetna benefit request form indicating that his condition was related to an accident but failing to indicate that it was job related. Dr. Palafox in a January 7, 1986 letter to Dominguez' attorney, stated: "At this time he attributes his lower back pain to the pain he first had in March of 1985 due to an injury sustained on the job. He injured himself while he was doing the type of job that he does, which is heavy physical work. He states that even though he never reported the injury, the pain flared up and then subsided, so this is why he thought that with time his pain would disappear by itself." Dominguez also emphasized in his cross-examination of the attorney who had represented Appellant in the compensation case that Appellant had made only a $1,500.00 offer, well below his $28,000.00 demand before the Board, the same amount as the ultimate settlement two years later, but this in itself is not evidence of an unreasonable basis for denying the claim. After notice had been given and during the investigation leading up to the IAB hearing, Dominguez on advice of counsel refused to give the claims representative a statement. Appellant's representative could not find any employee witness who could confirm Dominguez' complaints of pain or injury on the job. On the other hand, the representative recognized and put in her June 1986 report that Dominguez was required to bend and stoop frequently, to lift heavy weights, and work with heavy equipment, and that there were conflicting medical reports as to the date of injury. She apparently did not talk to Middleton, who could have confirmed that Dominguez had called in sick on February 27 with a swollen toe or foot but not job related. Dr. Zea's report diagnosed a back problem on that date. Even Dr. Driscoll's report of August 1985 mentions that though Dominguez had continued to work regularly after suffering a back injury three or four years before, he had "noticed recently that there's been an increasing amount of discomfort. I understand that he works on a unit that does a lot of vibrating and pushes his back around quite a bit, however he has continued to work and is concerned about the persistence of soreness in the back and some soreness in his right arm."

What we come down to is that up to the time Dominguez filed his claim with the IAB, there was little or no evidence to support a bad faith finding. However, once the Appellant was put on notice and had its representative conduct an investigation, there was some evidence, which we find was sufficient, from which the jury could have concluded first, that there was an absence of a reasonable basis for denying the claim, i.e. that a reasonable insurer under similar circumstances would not have denied the claim, and second, that the insurer knew or should have known, based on its duty to investigate and pay legitimate claims, that there was not a reasonable basis for denying the claim. *Aranda*, 748 S.W.2d at 213. These are jury fact determinations and on appeal are subject to the same sufficiency of evidence rules as are any other jury findings. When the Supreme Court in *Aranda* said at page 213: "Under the test, carriers will maintain the right to deny invalid or questionable claims and will not be subject to liability for an erroneous denial of a claim," we do not take that to mean that the determination is a question of law. It remains a question for the jury to determine. In this case, the jury was given a proper *Aranda* instruction on the Appellant's duty to deal fairly and in good faith. Appellant has, in its motion for rehearing, cited *Izaguirre v. Texas Employers' Insurance Association*, 749 S.W.2d 550 (Tex.App.—Corpus Christi 1988, writ denied); *Fuentes v. Texas Employers' Insurance Association*, 757 S.W.2d 31 (Tex.App.—San Antonio 1988, no writ); and *Price v. Texas Employers' Insurance Association*, 782 S.W.2d 938 (Tex. App.—Tyler 1989, no writ), for the proposition that in order to have legally sufficient evidence to support a bad faith finding, the claimant must adduce some evidence affirmatively indicating that the carrier had

no reasonable basis for the denial of his claim. Since all of the cited cases involved summary judgments for the insurer, two of which were upheld on appeal and the third (*Izaguirre*) was reversed, sufficiency of the evidence questions were not before those courts. Points of Error Nos. One and Five are overruled.

In its Points of Error Nos. Two, Three, and Four, Appellant raises issues of collateral estoppel, judicial admission and judicial estoppel as a result of Dominguez having approved the compensation judgment containing the statement that he agreed Appellant's liability was "indefinite, uncertain, and incapable of being exactly established and determined," and having testified in the present case that the statement was correct, truthful and honest.

When confronted with an issue of collateral estoppel, one of the requirements is that the facts which the adverse party seeks to litigate in this action were fully and fairly litigated in the prior action. *Bonniwell v. Beech Aircraft Corporation*, 663 S.W.2d 816, 818 (Tex.1984). "Full and fair litigation" means actual litigation in the previous suit of the same fact issues. *Puga v. Donna Fruit Company, Inc.*, 634 S.W.2d 677, 678 (Tex.1982); Restatement (Second) of Judgments, sec. 27 d and e (1982). An agreed judgment serves as an estoppel in a subsequent action only as to those facts actually and necessarily decided. *Coakley v. Reising*, 422 S.W.2d 502, 511 (Tex.Civ.App.—Corpus Christi 1967), *rev'd on other grounds*, 436 S.W.2d 315 (Tex.1968). Appellant cites *Price*, 782 S.W.2d 938, in support of its collateral estoppel theory. *Price* can be distinguished from this case by the facts that there the judgment recited that the trial court had heard evidence and expressed its opinion that the liability and extent of injuries were indefinite, uncertain and incapable of being established before approving the settlement, thus allowing the court of appeals to conclude that the "actual litigation" requirement had been met. In this case, the judgment made no similar recitation of evidence having been heard. Although Appellant also raised collateral estoppel in its

motion for summary judgment, the difference is that the movant in *Price* was successful and thus had no opportunity to waive the theory by allowing contrary evidence to come in without objection and by failing to object to the submission of a good faith issue, as occurred herein. In the instant case, in addition to waiver which will be discussed in the next paragraph, it was not essential to the judgment as it was framed that the statement concerning uncertain injuries and liability be included. The record fails to show that Appellant's liability was actually litigated. Point of Error No. Two is overruled.

Turning to the claimed error of the trial court in overruling Appellant's post trial motions because of Dominguez' alleged judicial admissions, assuming that Dominguez' approval of the judgment and his subsequent testimony on the subject were sufficient to raise the statement, "and all such issues are disputed, indefinite, uncertain, and incapable of being exactly established and determined" to the level of a judicial admission, *Izaguirre*, 749 S.W.2d at 555, failure to stand on the alleged admission by objecting to the introduction of any evidence and to the submission of a jury issue contrary thereto waives the admission. *Hurlbut v. Gulf Atlantic Life Insurance Company*, 749 S.W.2d 762, 765 (Tex.1987). In this case, Appellant not only failed to object to the submission of the good faith question, it offered its own version. *Hurlbut*, 749 S.W.2d at 765. Dominguez' testimonial declarations which were contrary to his position are quasi-admissions. They were some evidence but were not conclusive on him. The weight to be given such admissions was for the jury to decide. *Mendoza v. Fidelity and Guaranty Insurance Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex.1980). His testimony that the recitation in the agreed judgment was "truthful and correct" was not sufficiently deliberate, clear and unequivocal to be treated as a judicial admission. *Mendoza*, 606 S.W.2d at 694. We overrule Point of Error No. Three.

Appellant maintains that Dominguez was also judicially estopped from as-

serting bad faith denial of his claim in this case, having taken an inconsistent position in the compensation case and then having testified under oath in this case that the prior statement was "truthful and correct." In order to rely on judicial estoppel, as opposed to equitable estoppel, it must be shown by the party claiming the estoppel that the other party is estopped from making his present assertion merely by the fact of having alleged or admitted *under oath in a former proceeding* the contrary to such assertion. *Long v. Knox,* 155 Tex. 581, 291 S.W.2d 292 (1956); *Washburn v. Associated Indemnity Corporation,* 721 S.W.2d 928, 932 (Tex.App.—Dallas 1986), *writ ref'd n.r.e.,* 735 S.W.2d 243 (Tex.1987). Appellant seemingly realizes that judicial estoppel is not maintainable because Dominguez' approval of the agreed judgment cannot be said to be an admission under oath. Instead, it argues "equitable estoppel" arising out of an inconsistent position taken in a prior judicial proceeding. Where one takes a particular position in a judicial proceeding, he cannot later take a plainly inconsistent position in another proceeding. *Moore v. Means,* 549 S.W.2d 417, 418 (Tex. Civ.App.—Beaumont 1977, writ ref'd n.r. e.). In addition to a prior inconsistent judicial position, the proponent of equitable estoppel must show both reliance upon the claimed inconsistency and an injury resulting from such reliance. *Long,* 291 S.W.2d at 295; *Washburn,* 721 S.W.2d at 932. Appellant's first problem is that it did not raise equitable estoppel until the argument in its brief. Second, Appellant waived its reliance on estoppel by its failure to object to the introduction of any evidence and to the submission of a jury issue to the contrary. Finally, it cannot show any detrimental reliance on the recitation in the agreed judgment since the statement was neither required under Tex.Rev.Civ.Stat. Ann. art. 8306, sec. 10(d) (Vernon Supp. 1990) *(lump sum payment of lifetime benefits)* nor under art. 8307, sec. 12 (Vernon 1967) (IAB approval of settlement). Nor was there any evidence that Appellant relied on the statement to prevent a bad faith suit. Appellant's fourth point is overruled.

In its sixth through ninth points of error, Appellant contends that there was no evidence to support the submission of issues on past and future mental anguish, and insufficient evidence to support damage awards of $75,000.00 for past, and $50,000.00 for future mental anguish. These no evidence and factual insufficiency points are governed by the same rules as previously set forth. When it comes to a question of the legal and factual insufficiency of the evidence to support mental anguish claims, some of the old, time-honored conceptions and rules "have gone out the window." As contended by Appellant, it is probably still the law that in order to recover damages for mental anguish, the plaintiff must demonstrate more than mere worry, anxiety, vexation, embarrassment or anger. *Town East Ford Sales, Inc. v. Gray,* 730 S.W.2d 796, 803, 804 (Tex.App.— Dallas 1987, no writ); *Ryder Truck Rentals v. Latham,* 593 S.W.2d 334 (Tex.Civ. App.—El Paso 1979, writ ref'd n.r.e.). As stated in *Trevino v. Southwestern Bell Telephone Company,* 582 S.W.2d 582, 584 (Tex.Civ.App.—Corpus Christi 1979, no writ):

> 'Mental anguish' as an element of damages implies a relatively high degree of mental pain and distress; it is more than mere disappointment, anger, resentment, or embarrassment, although it may include all of these, and it includes mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation.

In this case, following his testimony that he had worked for his employer for twelve years without missing work except for sickness, that he did not think he was able to work because of problems with his back, foot, hip, arms and neck, that he lived on food stamps and went "on unemployment," that his utilities were turned off on occasion because there was no money to pay the bills, that his children went without new clothes except for what his older sons bought and that the welfare department investigated to determine whether his children were being properly cared for, Dominguez testified that he was hurt and embar-

rassed and "it create[d] a lot of anguish and emotional problems for [him]." Taken in context with his problems, Dominguez' statements were much more than the "mere worry, anxiety, vexation or anger" expressed in *Ryder Truck Rentals* and *Town East Ford Sales.* It is not necessarily how much a plaintiff emotes in the jury's presence that counts. It is the evidence of what has taken place in a plaintiff's life as a result of a defendant's actions, to which the jury can relate, that is just as important. See *City of Ingleside v. Kneuper,* 768 S.W.2d 451, 460 (Tex.App.—Austin 1989, writ denied). It is our conclusion that the question of mental anguish was raised by the evidence and such evidence was factually sufficient to support the finding. There is no definite standard by which to measure damages for mental anguish. Much discretion must be given to the jury in setting the amount. *Tidelands Automobile Club v. Walters,* 699 S.W.2d 939, 945 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.). Once it is determined that there was sufficient evidence to raise the question, the translation of mental anguish into a dollar amount is necessarily an arbitrary process, not subject to objective analysis. *Larson v. Cactus Utility Company,* 730 S.W.2d 640, 641 (Tex.1987); *Paragon Hotel Corporation v. Ramirez,* 783 S.W.2d 654, 660 (Tex.App.—El Paso 1989, writ denied); *Daylin, Inc. v. Juarez,* 766 S.W.2d 347, 352 (Tex.App.—El Paso 1989, writ denied). As we interpret the enunciation by Justice Kilgarlin in *Larson,* 730 S.W.2d at 641 (Tex.1987), if the evidence is factually sufficient to support a jury award of any amount for a particular element of damages, such as past mental anguish, then the Court of Appeals has no authority to suggest a remittitur, no matter how manifestly unjust or shocking to the conscience of the Court the amount of the award may be. Cases, such as *City of Watauga v. Taylor,* 752 S.W.2d 199, 204 (Tex.App.—Fort Worth 1988, no writ) and *Exxon Corporation v. Roberts,* 724 S.W.2d 863, 868 (Tex.App.—Texarkana 1986, writ ref'd n.r.e.), which seem to suggest that if the complaining party can show that the award for past mental anguish is so excessive as to be manifestly unjust, a remittitur would still be in order, are either pre-*Larson* or ignore it. Since we have concluded that there was sufficient evidence to support an award for past mental anguish in some amount, it is not the prerogative of the appellate court to supplant the fact finder in its determination of that amount. Points of Error Nos. Six and Seven are overruled.

■ In the eighth and ninth points, Appellant contends that the evidence was legally insufficient to support the submission of a jury question and any award, and factually insufficient to support the award of $50,000.00, for future mental anguish. On these points, we agree with Appellant. We can find no evidence to support the submission of the question on, or the award of, future mental anguish. Dominguez testified that at the time of trial, he was mentally healthy, that he was not seeing a psychiatrist or taking medication for any mental problems and that he remained well respected in his community. Things were going well for Dominguez at that time, as far as his mental state of being was concerned. Dominguez himself points to no evidence that he would continue to suffer in the future the same kind of stress or anguish he had in the past, but contends only that the jury could conclude from the evidence of his past mental anguish and from their own experience that the anguish will extend into the future. There must be some evidence that at the time of trial the plaintiff is still suffering the kind of mental anguish that is likely to extend into the future. *Paragon Hotel,* 783 S.W.2d at 660; *Brown v. Robinson,* 747 S.W.2d 24, 26 (Tex.App.—El Paso 1988, no writ). Points of Error Nos. Eight and Nine are sustained.

■ Under Points of Error Nos. Ten and Eleven, Appellant raises a legal sufficiency challenge to the submission of a question of whether it acted with conscious indifference to the rights and welfare of Dominguez and both legal and factual insufficiency challenges to the award of $175,000.00 as exemplary damages. Our Supreme Court has held that exemplary

damages are recoverable for a breach of the duty of good faith and fair dealing under the same principles allowing the recovery of such damages in other tort actions. *Arnold*, 725 S.W.2d at 168. Conscious indifference to the rights of others is sufficient to support an award of exemplary damages. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 933 (Tex.1983). However, it is obvious that lack of good faith and conscious indifference are not the same concept, semantically speaking or under the law; otherwise, it would be unnecessary to have two separate inquiries submitted to the jury. Breach of the duty of good faith and fair dealing in insurance cases is defined as the denial or delay in paying a claim without a reasonable basis for so denying or delaying such payment. *Arnold*, 725 S.W.2d at 167. "Conscious indifference to the right or welfare of a person" equates to gross negligence or heedless and reckless disregard and connotes an entire want of care. *Burk Royalty Company v. Walls*, 616 S.W.2d 911, 920 (Tex. 1981).

We find no evidence to support the submission of an issue on, or the finding of, conscious indifference. Without repeating all of the evidence heretofore summarized, the evidence, both direct and from reasonable inference, shows that Dominguez initially did not report his medical problem as being job related, that he submitted claims for himself and the doctors and collected benefits under his employer's disability insurance for nearly six months and that it was not until after he had employed counsel, over ten months after he first called in sick, that notice was given and claim made that his foot swelling and back problems were the result of repetitious trauma and therefore job related. Appellant, shortly after being notified, commenced an investigation through an independent claims representative. After the representative completed her investigation, we might add without the full cooperation of Dominguez, and submitted her report to Appellant, it denied the claim. Arguably the representative could have performed a better investigation and on that basis, we have previously concluded that there was at least some evidence to support

the submission and finding on the bad faith issue. But the fact that there were or may have been some inaccuracies in the claims representative's report was not evidence that Appellant acted with conscious indifference or an entire want of care toward the rights or welfare of Dominguez. Evidence that an accurate report indicating a valid claim had been furnished to Appellant and it had then chosen to deny the claim would be evidence of conscious indifference, but this was not the case. At least some of the inaccuracies of the report were traceable to the confused, or lack of, an investigative trail left by Dominguez. Although we have previously concluded Appellant had waived the defenses of judicial admission and equitable estoppel, the fact remains that Dominguez agreed that Appellant's liability was indefinite, uncertain and incapable of being exactly established and determined, precluding conscious indifference on the part of Appellant. Appellant's tenth point of error is sustained. Having concluded that there was no evidence to support the conscious indifference finding, it is unnecessary to consider the factual sufficiency challenge to that finding and the jury's award of $175,000.00.

Judgment is affirmed as to damages for past mental anguish in the amount of $75,-000.00, and reversed and rendered as to the damages for future mental anguish and as to exemplary damages.