**TRANSPORTATION INSURANCE COMPANY, Appellant,**

v.

**Juan Carlos MORIEL, Appellee.**

**No. 08–90–00313–CV.**

Court of Appeals of Texas,
El Paso.

July 3, 1991.

Rehearing Overruled July 31, 1991.

Victor F. Poulos, Mayfield and Perrenot, El Paso, Charles I. Hadden, Peter G. Thompson, Ross, Dixon & Masback, Washington, D.C., for appellant.

C.R. Kit Bramblett, Bramblett & Bramblett, Susan Larsen, El Paso, for appellee.

Before FULLER, WOODARD and KOEHLER, JJ.

## OPINION

WOODARD, Justice.

This is an appeal from a judgment based upon a jury award to the Appellee of $101 thousand compensatory damages and $1 million in punitive damages resulting from the insurance company's breach of its duty to deal fairly and in good faith with reference to a prior worker's compensation claim. We affirm.

The jury found that the Company had unreasonably delayed payment of Mr. Mor-

iel's medical bills, and that such delay had amounted to a heedless and reckless disregard of Moriel's rights.

Points of Error Nos. One and Seven contend that the finding by the trial court of "uncertain" liability by the Company, and Moriel's admission of "uncertain" liability, precludes damages for mental anguish and punitive damages as a matter of law because failure to pay an uncertain liability cannot be heedless and reckless conduct.

■ Mental anguish damages are recoverable when there is proof of a willful tort, willful and wanton disregard or gross negligence. *Luna v. North Star Dodge Sales, Inc.*, 667 S.W.2d 115 (Tex.1984).

■ Moriel had won an award from the Industrial Accident Board (IAB). The Company appealed to the trial court and Moriel counterclaimed that the Company had failed to pay medical expenses. The trial court had entered a prior partial judgment based upon a settlement agreement arrived at between the parties. The pertinent part of the judgment recited:

And it appearing to the Court that the extent of the injury and liability for compensation or medical expenses are uncertain and that under the agreement of settlement, Plaintiff TRANSPORTATION INSURANCE COMPANY, is to pay....

The partial judgment subsequently expressly decreed that "all liability of any character" arising out of claims made pursuant to allegations of bad faith and unpaid or delayed payments of medical bills are excluded. The trial court's opinion regarding "uncertainty" is merely a preamble recital and not controlling when there is conflict between the preliminary recital and the decretal portion of the judgment. *George Thomas Homes, Inc. v. Southwest Tension Systems, Inc.*, 763 S.W.2d 797 (Tex.App.—El Paso 1988, no writ). It is in conflict with the decretal part of the judgment, as the essence of the plaintiff's separated action is that the medical bills were "certain," and the Company, in bad faith, delayed payment of them. For the trial court to find the liability for the medical

bills to be "uncertain" as a matter of law on the one hand and then decree that an action may be brought based upon the "certainty" of the medical bills on the other hand is conflictive. Although it has been held that the court is to apply the same standard as the IAB when reviewing settlement agreements in worker's compensation cases, and that an essential element in approving the settlement agreement was a determination of whether the insurer's liability *or* the extent of the injury was uncertain, indefinite or incapable of being determined [*Price v. Texas Employers' Insurance Association*, 782 S.W.2d 938 (Tex. App.—Tyler 1988, no writ)], it was stated in the judgment that both were uncertain. As the judgment ordered the full medical bills in question to be paid, then allowed for an action based upon its failure to pay, it was obvious that some question as to the extent of the injury allowed the trial court to approve the settlement in keeping with *Price*, if *Price* was complied with.

The Appellant relies on the language by this Court in a somewhat similar case, *National Union Fire Insurance Company of Pittsburgh, Pennsylvania v. Dominguez*, 793 S.W.2d 66 (Tex.App.—El Paso 1990, writ denied), to wit:

> Although we have previously concluded Appellant had waived the defenses of judicial admission and equitable estoppel, the fact remains that Dominguez agreed that Appellant's liability was indefinite, uncertain and incapable of being exactly established and determined, precluding conscious indifference on the part of Appellant. *Id.* at 74.

The settlement agreement between the parties in the case before us is not in evidence. There is no evidence that Moriel agreed that the Company's liability was uncertain.

Justice Koehler, in his following dissent, states that Moriel agreed that the medical bills were "uncertain" by his attorney's unqualified approval of the judgment. We respectfully disagree. A consent judgment is in most respects the same as a contract between the parties and is ordinarily to be construed as such. *Heights Funeral Home v. McClain*, 288 S.W.2d 839 (Tex.Civ. App.—Beaumont 1956, writ ref'd n.r.e.).

The intentions of the parties in such instances may be determined from the recitations of the judgment itself. *Id.* The previous reasoning used in differentiating the preamble recitation from the decretal provisions applies here. Assuming arguendo that an expressed impression formed by the trial judge—perhaps based upon evidence and perhaps not—creates the possibility of a contractual duty, this "term" of contract is surplusage. For the parties to agree that the medical bills were "uncertain," and then agree that they may proceed to litigate whether the medical bills were "uncertain" is inconsistent with the intent of the instrument. The contractual view of the judgment as a whole renders the "term" of "uncertainty" inadvertent surplusage as to the payment of the medical bills.

> Estoppel by judgment operates on issues of fact and issues of law. The determination of the particular issue must have been essential to the support of the prior judgment. The particular issue must have been actually determined by the prior judgment, or else must have been necessarily involved in the determination made. The estoppel applies whether the issue is determined by agreement or by the tribunal to which it has been submitted. The determination made by the prior judgment need not have been right.

*Heights Funeral Home v. McClain*, 288 S.W.2d at 843. When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim. Restatement (Second) of Judgments, § 27 (1982). If issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded. *Id.* at 258. An agreed judgment serves as an estoppel in a subsequent action only as to those facts actually and necessarily decided. *Dominguez*, 793 S.W.2d at 71. As pointed out by Justice Koehler in the same paragraph, if the judgment does not recite

that the trial court had heard evidence and expressed its opinion that the liability and extent of injuries were indefinite, uncertain and incapable of being established before approving the settlement, there is no conclusion of actual litigation of the question or opportunity for waiver by trial by consent. There is no recitation in the judgment that the trial court heard evidence in this case. Points of Error Nos. One and Seven are overruled.

In that the remaining points of error concern legal and factual insufficiency assertions, we set forth here the standards of review we apply to such points to avoid repetition under each of them. In considering a "no evidence" legal insufficiency point, we consider only the evidence which tends to support the jury's findings and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965). A factual insufficiency point requires us to examine all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). The reviewing court cannot substitute its conclusions for those of the jury. If there is sufficient competent evidence of probative force to support the finding, it must be sustained. *Carrasco v. Goatcher*, 623 S.W.2d 769 (Tex.App.—El Paso 1981, no writ). It is not within the province of the court to interfere with the jury's resolution of conflicts in the evidence or to pass on the weight or credibility of the witness's testimony. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792 (1951). Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508 (1947); *Clark v. National Life & Accident Ins. Co.*, 145 Tex. 575, 200 S.W.2d 820 (1947).

■ Point of Error No. Two alleges factual and legal insufficiencies to support the jury's finding of heedless and reckless disregard of Moriel's rights by the Company.

Moriel received a job related injury on March 15, 1986, when a stack of countertops fell on him in an El Paso hardware store. Moriel sustained a fractured pelvis, a broken left wrist and broken ribs.

Some ten days later, the Company's adjuster visited Moriel in the hospital and then arranged compensation for lost wages. He recommended that the insurance company set aside money to cover lost wages and medical expenses.

After Moriel was discharged from the hospital, he lost sensation in one of his legs. He was sent back to the hospital for testing on an outpatient basis, incurring an additional $382.25 charge by Providence Hospital. The Company paid the firstly incurred hospital charges of $6,706.30, but failed to pay the latter until over one year later. In the interim, Providence attempted to collect the $382.25 charge from Moriel and filed suit in the justice court against him. The Company's employees testified the bill was in their file, but the reason for nonpayment was unknown.

In April of 1986, Moriel discovered that he was sexually impotent. Moriel consulted Dr. Ghiselli, who referred him to Dr. Garduno, a urologist. Moriel was tested by Pathlab, and he received their bill for $238.20. The bill had also been sent by a Pathlab employee to the wrong insurance company. There is no evidence when the Company received the bill but it was paid by the Company shortly before the May 1990 trial of the case. The attorney for Moriel noted in his letter of October 1987 to the Company, that the Company had continually failed to pay this bill. No reason for failure to pay this bill was given by the Company other than possible oversight.

In June or July of 1986, Moriel was sent by Dr. Garduno to Dr. Diaz for examination at the Sleep Disorder Clinic in El Paso in reference to the impotency. Essential testing machines were inoperative at that time, so he was released after three days. Dr. Diaz recommended that he go to the Baylor Sleep Disorder Center in Houston. Moriel then went to the adjuster with this information. The adjuster said he needed a letter of recommendation from Dr. Ghiselli.

He obtained this letter, delivered it to the adjuster and was then told that he needed a letter from Dr. Garduno. He obtained it, passed it on to the adjuster and then was told he needed a letter from Dr. Diaz. He acquired it, presented it to the adjuster and then was told the adjuster had to confer with his corporate office. The adjuster said he would call Moriel. When no call ensued, Moriel returned to the adjuster's office and was told he could go but he would have to pay his own travel expenses. In the interim, an appointment with the Baylor Center that had been made previously by Dr. Diaz was required to be rescheduled. The bill for the Baylor Center testing was $3,155.00 and dated September 25, 1986. This bill was not paid until after the settlement agreement that preceded the July 1988 judgment. The Company had filed a formal statement of position with the IAB in July 1987, in which it contested the expenses to travel to Houston because there were adequate medical facilities for care and testing locally but acknowledged its statutory responsibility to pay reasonable and necessary medical bills. The charges for impotency testing or treatment had not been controverted as allowed by law with the IAB.

Following the Baylor Center examination, Moriel and his wife received counseling from Dr. Perez, a psychiatrist. The charges were $2,075.00. Dr. Perez billed the Company and Moriel in December of 1986, February and March of 1987. The bill was finally paid pursuant to the settlement agreement.

Testimony from agents and employees of the Company indicated good faith on their part. They were unsure impotency was part of the injury. It was stated that some of the bills were probably innocently overlooked. Travel expenses to Houston were denied because they were unsure it was connected to the injury. It was further represented that some bills were not received. The requirement of letters from one doctor and then another was on the recommendation of the head office, and was made in prudent business procedures that bore no malice. The Baylor Center's bill and Dr. Perez' bill were not paid because the Company was entitled to a prerequisite medical report that was not received. However, the agent for the Company did not list this as the reason payments were denied when asked previously in a deposition.

The question answered affirmatively by the jury was:

Did the acts or conduct of Defendant, TRANSPORTATION INSURANCE COMPANY, amount to a heedless and reckless disregard to Plaintiff's rights?

The term "heedless and reckless disregard" means more than momentary thoughtlessness, inadvertence or error of judgment. It means such an entire want of care as to indicate that the act or omission in question was the result of conscious indifference to the rights, welfare or safety of the person effected [sic].

"Heedless," "reckless" and "conscious indifference" can involve an inquiry into mens rea in its determination, and although the ascertainment of one's state of mind peculiarly lies in the province of the fact finder, there must be some direct, inferential or circumstantial evidence supporting the finding. The jury could have believed the events as testified by the agents of the Company, or they could have believed that the injury to the genital area made impotency a realistic possibility. The Company, believing that the private and personal nature of the injury would dissuade litigation, commenced an obstinate and delaying course of action to bring about abandonment of the claim or settlement. At one point, the agent for the Company acknowledged the injury to be a result of the accident, but complained that the attorney for Moriel would not discuss the possible reduction of overall damages due to treatment. Almost all the evidence that would justify the actions of the Company came through interested witnesses of the Company. The net result of these actions, however, produced inconsistent and delayed action on the part of the Company. The jury could infer from these actions in their assessment of credibility of the witnesses, a heedless and reckless conduct on the part

of the Company. Point of Error No. Two is overruled.

■ Point of Error No. Three alleges the $1 million punitive damage award is excessive, as a matter of law, as it exceeds the limit set forth in the Civil Practice and Remedies Code. In Appellant's brief before us, it is stated "[t]he award of $1,000,-000 in punitive damages violates Section 41.007 of the Civil Practice and Remedies Code. Under that provision, 'exemplary damages awarded against a defendant may not exceed four times the amount of actual damages or $200,000, whichever is greater.' "

The most specific objection before the trial court in posttrial motions was that the damages violated "the standard of reasonable proportion and the factors for apportioning exemplary damages in Texas law, and the statutory guidance provided in the Civil Practice and Remedies Code of Texas," made in a Motion for Remittitur filed some twenty-two days after the verdict was received. In a Motion To Disregard Jury Findings, it was alleged that the punitive damages were excessive. In the Motion For Judgment Non Obstante Veredicto, it was alleged that the punitive damages were excessive and disproportionate. In a Motion For New Trial, it was alleged the punitive damages were excessive. In argument before the trial court under the posttrial motions, counsel for the Appellant stated "[t]he Civil Practice and Remedies Code, as the Court is now aware, remedies in effect this situation and only allows for punitives of four times actuals now. *This case was filed one month before that became applicable,* but I think the Court can however refer to the legislature [sic] history and the reasons for that in determining that the punitives awarded here were not proportioned to the actuals." [Emphasis added]. To preserve error, an objection must state the specific grounds for the desired ruling if those grounds are not apparent from the context of the objection. *McKinney v. National Union Fire Insurance Company of Pittsburgh, Pennsylvania,* 772 S.W.2d 72 (Tex.1989). A specific objection is one which enables the trial court to understand the precise grounds so as to make an informed ruling, affording the offering party an opportunity to remedy the defect, if possible. *Id.* Objections like "failed to give full effect to the statute" without setting out specifically the manner of failure have been held insufficient to preserve error. *Scott v. Webb,* 583 S.W.2d 846 (Tex.Civ.App.—Dallas 1979, writ dism'd). In the interest of judicial economy and the preclusion of the injustices of retrial, trial judges are entitled to fair notice of potential error. Although a retrial on this point would not be necessitated even if the point was sustained, the objections made in the motions did not enable the trial court to understand the precise grounds of an explicit statutory cap on damages so as to make an informed ruling thereunder. The argument made in the posttrial motions, stating that the unenumerated statute was inapplicable, further waived any error under the statute. Tex. R.App.P. 52(a). Point of Error No. Three is overruled.

Point of Error No. Five contends the trial court erred in awarding $1 million in punitive damages, because the award and the procedures employed in making the award violate the Federal and State Constitutions.

■ Although Tex. Const. art. I, § 19 is mentioned and referred to protecting the same rights as does the Federal Constitution, there is no further reference. Failure to brief the matter results in the waiver of the issue as to violations of the State Constitution except as they may incidentally coincide with the Federal issues briefed. *Valero Transmission Company v. Wagner & Brown,* 787 S.W.2d 611 (Tex.App.—El Paso 1990, dism'd by agr.).

■ The United States Supreme Court has recently held the punitive damages assessed by the jury were not violative of the due process clause of the Fourteenth Amendment. *Pacific Mutual Life Insurance Company v. Cleopatra Haslip,* —— U.S. ——, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991). This Court has recently issued an opinion on the issue in *State Farm Mutual Automobile Insurance Company v. Zubiate,* 808 S.W.2d 590 (Tex.App.—El Paso

1991, writ pending). In those two cases, as in this one, the jury was given guidelines in determining the amount of exemplary damages. No objection to the charge regarding the burden of proof or denial of bifurcation of trial was made. Point of Error No. Five is overruled.

■ Point of Error No. Six alleges the trial court erred in awarding actual, mental anguish and punitive damages based on Transportation's breach of an implied duty of good faith and fair dealing in claims handling because the exclusivity and penalty provisions of the Worker's Compensation Act preclude such an action. Appellant relies on the dissent in *Aranda v. Insurance Co. of North America*, 748 S.W.2d 210 (Tex.1988), but recognizes that this Court is bound by the majority opinion. Point of Error No. Six is overruled.

■ Point of Error No. Four complains that $1 million in punitive damages is excessive.

The historical philosophical turmoil and the ebb and flow of doctrine changes of punitive damages are still with us in American law. The English view, which is shared by some of our states, regarded them not as punishment, but as extra compensation for injured feelings or sense of outrage. C.T. McCormick, *Handbook Law of Damages*, § 78 at 279 (1935). In Texas, punitive damages are intended to punish the defendant and to set an example to others. *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex.1985).

Exemplary damages must be reasonably proportioned to actual damages. *Alamo National Bank v. Kraus*, 616 S.W.2d 908 (Tex.1981). There can be no set rule or ratio between the amount of actual and exemplary damages which will be considered reasonable. This determination must depend upon the facts of each particular case. Factors to be considered in determining whether an award of exemplary damages is reasonable include:

(1) the nature of the wrong;
(2) the character of the conduct involved;
(3) the degree of culpability of the wrongdoer;

(4) the situation and sensibilities of the parties concerned; and
(5) the extent to which such conduct offends a public sense of justice and propriety. *Id.* at 910.

In this case, the jury was given in the charge additional standards for its determination, to wit: (1) the frequency of the wrongs committed, and (2) the size of the award needed to deter similar wrongs in the future.

As viewed in the light most favorable to the verdict, the nature of the wrong was the taking of unfair advantage. One who was in a superior bargaining position took advantage of its insured's misfortunes in bargaining for settlement or resolutions of claims.

The conduct could have reasonably been perceived by the jury to be intentional.

There is no direct evidence that the improper conduct in question was expressly authorized by the controlling officers of the corporation as a continuing part of company policy.

The situation and sensibilities of the parties concerned evidenced a man receiving an injury that affected an intimate and personal part of his life. He was sued. He was charged with the medical bills. He resorted to heavy drinking, and his marriage was jeopardized.

The verdict rendered by twelve citizens, in itself, is some indication as to the extent to which the conduct offends a public sense of justice and propriety in particular. The State Board of Insurance, in Board Order 41454, condemns unfair claim settlement practices, which condemnation is sanctioned by the legislature in Tex.Ins.Code Ann. art. 21.21, § 16 (Vernon 1981 and Supp.1991) and denounced by the Court in *Arnold v. National County Mutual Fire Insurance Company*, 725 S.W.2d 165 (Tex. 1987). This is indicative of the offensive nature of the conduct to the public sense of justice and propriety in general.

Again viewing the evidence in a light most favorable to the verdict, there was a continuing course of wrongs committed in the case before us.

There is evidence that the net worth of the Company on the date of trial was somewhere between $30,762,515.00 and $53,453,-638.00, depending upon the collectibility of the 1987 insurance premiums. If an insurance company continually and wrongfully denied part or all of its coverage, it might well be profitable conduct. In a mass society where many do not know the business transactions of their neighbors, the business reputation of a company has become almost impossible to assess by the public. Many people are reticent to seek legal advice and do not know how to enforce their rights under a contract. Others do not want to endure the embarrassment, pain and uncertainty of litigation. Modern discovery, with its vast paperwork, conferences and increasingly more frequent hearings, including petitions for mandamus, have increased the cost of litigation to a point where an average man may not be able to afford the protection of his rights. Determining the amount of penalty money it takes to deter the wrongful action is a misty quest indeed. The jury is allowed evidence of the net value of a company so that it may determine some penalty severe enough to make future wrongful conduct unprofitable, but generally not so severe as to render the company insolvent. The verdict appears to be within these parameters.

Our legislature has placed limits on some exemplary damage awards as found in the Medical Liability and Insurance Improvement Act, Tex.Rev.Civ.Stat.Ann. art. 4590i (Vernon Supp.1991); the Texas Tort Claims Act and as provided by Tex.Civ.Prac. & Rem.Code Ann. § 41.007 (Vernon Supp. 1991), which is some indication of public concern in reference to punitive damages. Trial bifurcation, as suggested by Justice Gonzalez but discouraged by Chief Justice Phillips, in *Lunsford v. Morris*, 746 S.W.2d 471 (Tex.1988), with more trial attention given to punitive damages, is desirable in many cases even though it may lengthen a trial. The objectives of punitive damages as espoused in *Cavnar* are similar to the objectives of our Penal Code, except the Penal Code recognizes the desirability of rehabilitation. Tex.Penal Code Ann. § 1.02 (Vernon 1974). In the proper case upon motion to the trial court, a bifurcated trial would allow evidence, without undue prejudice, of what steps a defendant has taken to prevent future wrongs of a similar nature to be considered, other mitigating circumstances, along with the evidence of a defendant's ability to pay punitive damages. Surely our system of justice will not suffer if an element of damage, which often represents the major portion of money damages awarded, is carefully scrutinized through relevant and material evidence.

This case fits favorably to the verdict within the guidelines set forth in *Alamo*, and we find that the $1 million exemplary damages are not excessive nor unreasonably proportioned to actual damages. Point of Error No. Four is overruled.

Judgment of trial court is affirmed.

KOEHLER, Justice, dissenting.

I respectfully dissent from the majority opinion.

The majority differentiates this case from *National Union Fire Insurance Company of Pittsburgh, Pennsylvania v. Dominguez*, 793 S.W.2d 66 (Tex.App.—El Paso 1990, writ denied) first on the basis that Moriel did not agree that the liability of Transportation was uncertain, and second, from the fact that the uncertainty of liability is merely a "preamble recital" and thus not controlling if in conflict with the adjudicative portion of the judgment. While I agree that there are some substantial differences between this case and *Dominguez*, I differ with the majority in that Moriel did agree, through his attorney's unqualified approval of the partial judgment, with the recitation of the uncertainty of liability. Moreover, the recitation of uncertainty of liability is not necessarily in conflict with that portion of the judgment that "orders" that the judgment does not release Transportation from liability for bad faith in its failure to pay or delay in paying medical bills. It is unusual for a court to order rather than recite what the judgment does not cover or release and is no more appropriate than if the court had ordered that liability was uncertain. The fact that the court found, with Moriel's

approval, that liability was uncertain, precludes a finding of conscious indifference, or as it is called in this case heedless and reckless disregard, on the part of Transportation. *Dominguez*, 793 S.W.2d at 74.

Turning next to the evidentiary support for the jury's finding of heedless and reckless disregard of Moriel's rights, there is evidence of bad faith and negligence in the handling of the claim and the delay in paying some of the medical bills. But in view of the fact that Transportation never denied the claim, paid substantial amounts of compensation and medical on time and despite the question and delay over the impotency problem, did not ultimately refuse or deny examination and treatment of Moriel's medical and psychological problems, the evidence that Transportation failed to pay or delayed in paying four medical bills as a result of conscious indifference of Moriel's rights and welfare amounts to little more than a scintilla. Except for the attorney's demand letter that Transportation pay the bill of Baylor College of Medicine Sleep Disorders and Research Center, there was little evidence that either Moriel or his attorney brought the nonpayment of the other three bills to Transportation's attention until after Providence Memorial Hospital filed suit against Moriel to collect a relatively small bill. There is insufficient evidence to support the jury finding. I would sustain Point of Error No. Two.

Under Transportation's third point of error complaining that the award of punitive damages exceeds the limit for such damages under Section 41.007 of the Civil Practice and Remedies Code, I differ markedly with my colleagues' conclusion that the error was waived by Transportation's failure to make a sufficiently specific objection in its posttrial motions and argument. As the majority opinion recognizes, Transportation in its *Motion for Remittitur* stated that the "punitive damages of $1,000,000 violates ... the statutory guidance provided in the Civil Practice and Remedies Code of Texas," and in its argument pointed out that the Code *"as the Court is now aware,* remedies in effect this situation and only allows for punitives of four times actuals

now." [Emphasis added]. As stated in *McKinney v. National Union Fire Insurance Company of Pittsburgh, Pennsylvania,* 772 S.W.2d 72, 74 (Tex.1989), and reiterated by the majority opinion, "[t]o preserve error, an objection must state the specific grounds for the desired ruling *if those grounds are not apparent from the context of the objection.* Tex.R.App.P. 52(a). A specific objection is one which enables the trial court to understand the precise grounds so as to make an informed ruling,...." [Emphasis added]. Judges are not dolts and are expected to know something of the law. Just as in *McKinney* where the Supreme Court held that the objection to a not-previously identified fact witness referenced to the Rules of Civil Procedure generally without specifying a particular rule was sufficiently specific, Transportation's objection clearly brought to the court's attention the newly enacted law and its application. In addition, from the remark by Transportation's attorney of the court's awareness of the relevant Code provisions, an inference can be drawn that a discussion had taken place off the record. Since from the record it appears that Moriel's petition was not amended to allege for the first time grounds for exemplary damages until after the effective date (September 2, 1987) of Section 41.007, the Act would apply and exemplary damages would thus be limited to an amount not to exceed four times the amount of actual damages. Since damages for mental anguish are considered actual damages, I would on this point of error alone sustain and order a remittitur of $596,000.00 as being the excess over four times actual damages of $404,000.00.

For these reasons, I respectfully dissent.