CITY OF LA PORTE, Texas, Appellant,

v.

Allen Ray PRINCE, Appellee.

No. 10–92–076–CV.

Court of Appeals of Texas, Waco.

Feb. 24, 1993.

Concurring and Dissenting Opinion of Justice Vance March 3, 1993.

Rehearing Denied April 28, 1993.

James P. Wallace and W. Charles Campbell, Soules & Wallace, Austin, C. Charles Dippel, Law Office of C. Charles Dippel, Houston, for appellant.

Dale W. Felton, Felton & Associates, Houston, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

THOMAS, Chief Justice.

The jury found that the City of La Porte fired Allen Prince, one of its employees, because he filed a claim for workers' compensation. The City appeals a judgment in Prince's favor for $100,000 in actual damages and $1,000,000 in exemplary damages. It argues that the court erred by not granting it a directed verdict based on the defense of governmental immunity, by awarding exemplary damages, and by submitting a question to the jury when there was no evidence or insufficient evidence to support its submission. The City also contends that the court erroneously excluded the testimony of two witnesses and wrongfully awarded prejudgment interest. We affirm.

Allen Prince was employed by the City of La Porte as a sewer lift-station operator. On June 10, 1983, he was injured on the job and reported his injury to his foreman. He then went to the doctor who diagnosed the injury as a hernia. Prince had hernia-repair surgery on June 23. His doctor told him that he should expect to be off work for six to eight weeks after surgery. Prince told his foreman and the City's personnel coordinator the length of time he expected to be off work. He filed a claim for workers' compensation benefits, but it was denied by the insurance carrier. He then filed a claim with the Industrial Accident Board.

On July 27 Prince told his foreman that he should be released to return to work in two or three weeks. The foreman told him to go see Luther Maxey, the department superintendent. Maxey fired Prince. Ten days later Prince was released by his physician to return to work.

The City claims to have a personnel policy that incapacity will result in a nondisciplinary termination of employment if the employee is incapable of returning to work within thirty days following the use of sick-leave benefits. The City argues that Prince's termination is justified under this policy because he was absent from work for more than thirty days and would not be able to work for at least another week following his termination. It introduced into evidence the termination document relating to Prince that states he was terminated for two reasons: incapacity and misconduct towards other employees. Prince argued, however, that he was fired because he filed a workers' compensation claim against the City, and that City employees were afraid to file such claims because many who did were fired from their jobs.

The jury found that Prince was wrongfully discharged. In addition, it found that the wrongful conduct in discharging him was imputed directly to the governing body of the City and assessed $100,000 in actual damages and $1,000,000 in exemplary damages against the City.

## GOVERNMENTAL IMMUNITY

■ The City, in its first point, argues that the court erred in denying its motion for an instructed verdict based on governmental immunity. Prince brought suit for wrongful discharge under article 8307c:

Sec. 1. No person may discharge or in any other manner discriminate against any employee because the employee has in good faith filed a claim, hired a lawyer to represent him in a claim, instituted, or caused to be instituted, in good faith, any proceeding under the Texas [Workers]' Compensation Act, or has testified or is about to testify in any such proceeding.

Sec. 2. A person who violates any provision of Section 1 of this Act shall be liable for reasonable damages suffered by an employee as a result of the violation, and an employee discharged in violation of the Act shall be entitled to be reinstated to his former position. The burden of proof shall be upon the employee.

See TEX.REV.CIV.STAT.ANN. art. 8307c (Vernon Pamph.1993). This article provides a terminated employee a cause of action if he was discharged for pursuing a workers' compensation claim. *See Azar Nut Co. v. Caille,* 734 S.W.2d 667, 668 (Tex.1987). Such a discharge gives rise to the recovery of all damages suffered by the employee, plus exemplary damages. *Id.*

The Texas Constitution authorizes the Legislature to make municipalities subject to the Workers' Compensation Act. TEX. CONST. art. III, § 61. Article III, section 61, gives the Legislature the power to enact laws to enable cities to provide workers' compensation insurance for all employees and to pass laws for the administration of this insurance.

▇▇ The Legislature amended the Workers' Compensation Act to require political subdivisions to extend workers' compensation benefits to their employees and to make certain provisions of the Act applicable to political subdivisions. TEX.REV.CIV. STAT.ANN. art. 8309h (Vernon Pamph.1993); *Lyons v. Texas A & M University,* 545 S.W.2d 56, 58 (Tex.Civ.App.–Houston [14th Dist.] 1977, writ ref'd n.r.e.). Article 8309h specifically provides that "political subdivisions" are subject to the prohibitions of article 8307c. TEX.REV.CIV.STAT.ANN. art. 8309h § 3. A "political subdivision" includes a "home-rule city, a city, town, or village." *Id.* § 1(1). Thus, the City of La Porte is an employer that is prohibited from discharging an employee for filing or pursuing a workers' compensation claim.

In addition, the Texas Tort Claims Act provides that a governmental unit that accepts the workers' compensation laws is entitled to the same privileges and immunities granted by the workers' compensation laws to private individuals and corporations. TEX.CIV.PRAC. & REM.CODE ANN. § 101.028 (Vernon 1986) (formerly TEX.REV. CIV.STAT.ANN. art. 6252–19 (Vernon 1970)). A private individual or corporation is not immune from the prohibitions in article 8307c. Therefore, only enjoying the same immunities as private individuals or corporations, a city is subject to the prohibitions in article 8307c, the same as private individuals and corporations. Governmental immunity does not protect a city against a cause of action under article 8307c, and the court properly denied the City an instructed verdict on that ground. *See Barfield v. City of La Porte,* 849 S.W.2d 842 (Tex. App.–Texarkana, 1993, n.w.h.). We overrule point one.

## EXEMPLARY DAMAGES

The City, in its second through sixth points, complains that the award of exemplary damages is not supported by legally—or factually—sufficient evidence. We apply the rules for reviewing these evidentiary complaints on appeal. *See Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986).

▇▇ As a general rule, a municipality may not be held liable for exemplary damages; however, if the plaintiff can prove that there is intentional, willful, or grossly negligent conduct that shows an entire want of care for his rights and that such conduct can be imputed to the governing body of the municipality, exemplary damages may be recovered. *City of Gladewater v. Pike,* 727 S.W.2d 514, 522 (Tex.1987). By requiring a plaintiff to show both wanton, malicious, or grossly negligent behavior *and* imputation of that conduct to the city's leadership, recovery of exemplary damages is limited to only those exceedingly few situations where the actions of persons in authority show utter disdain for the protection of citizens' rights. *Id.* at 524. Under these circumstances, a jury can consider awarding exemplary damages against a municipality. *Id.*

Essentially, the first requirement in *City of Gladewater* is to determine whether the municipal agent acted with a culpable state

of mind that resulted in injury. *Id.* 727 S.W.2d at 522–23. Thus, the plaintiff must first show that the actor engaged in willful, wanton, malicious or grossly negligent conduct. *Id.* at 523. In other words, a plaintiff must show "that entire want of care which would raise the belief that the act or omission complained of was the result of conscious indifference to the right or welfare of the person or persons to be affected." *Id.* (quoting *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 920 (Tex.1981)).

■ The jury found that the City of La Porte and Maxey, the department superintendent, acted with such conduct. Maxey was aware that Prince would be unable to work for six to eight weeks. He also knew at the time he fired him that Prince would be able to return to work within two weeks. Furthermore, Maxey fired Prince immediately after asking him if he had filed a workers' compensation claim against the City, or as Maxey put it, "What's this bullshit I hear about you filing a lawsuit on the City?" Maxey admitted that he was referring to Prince's workers' compensation claim. Several witnesses also claimed that City employees were afraid to file a workers' compensation claim because many who did so lost their jobs. This evidence is both legally and factually sufficient to support findings that the City had an official, but unwritten, policy to terminate employees for filing a workers' compensation claim; that Maxey's conduct was wilful and malicious and in furtherance of that policy; that he fired Prince for having pursued a worker's compensation claim against the City and not for physical incapacity; and that he acted with conscious indifference to Prince's rights and welfare.

■ The second element in *City of Gladewater* requires Maxey's wrongful conduct to be imputed to the leadership of the City. *See id.* 727 S.W.2d at 523. To impute tortious actions to the City, the evidence must show that the acts were expressly authorized by the City. *See id.* The court in *City of Gladewater* remarked that:

Liability must rest on official policy, meaning the city government's policy, and not on the policy of an individual official. The policy is that of the city, however, where it is made by an official under authority.... City policymakers not only govern conduct[,] they decide the goals for a particular city function and devise the means of achieving those goals. Policymakers act in the place of the governing body in the area of their responsibility; they are not supervised except as to the totality of their performance.

*Id.* at 523 (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir.1984)).

■ The United States Supreme Court has also addressed this issue. The government as an entity is responsible when the execution of its policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts injury. *Monell v. Dept. of Soc. Serv. of City of N.Y.*, 436 U.S. 658, 694–95, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). Like other governmental entities, municipalities often spread policymaking authority among various officers and official bodies. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479–80, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986). As a result, particular officers may have authority to establish binding policy in certain matters. *Id.* 106 S.Ct. at 1300. When action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly. *Id.* 106 S.Ct. at 1299. In other words, those municipal officers who have "final policymaking authority" may by their actions subject the government to liability. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988).

■ "Official policy" often refers to formal rules or understandings—frequently, but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time. *Pembaur*, 475 U.S. at 480, 106 S.Ct. at

1299. If the decision to adopt a particular course of action is properly made by a government's authorized decision-makers, it represents an act of official government policy. *Id.* Furthermore, a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *St. Louis v. Praprotnik,* 485 U.S. at 124, 108 S.Ct. at 926.

 Moreover, an unconstitutional governmental policy can be inferred even from a single decision taken by the highest official responsible for setting policy in that area of the government's business. *Id.* 108 S.Ct. at 924. Thus, when government agents act in accordance with formal policies, or under informal practices so permanent and well settled as to constitute a "custom or usage" with the force of law, their acts are imputed to the municipality. *Id.* 108 S.Ct. at 932. (Brennan, J., concurring).

 La Porte mayor Norman Malone testified that the city council delegated the responsibility for personnel policies to the city manager, that the council put the city manager in charge of rule-making and personnel policies, and that the council did not involve itself in hiring and firing city employees. Robert Herrera, the city manager at the time of trial, testified that a termination is not effective until it is approved by the city manager. Anybody that was fired from the City, he said, was fired with the approval of the city manager.

Jack Owen was the city manager in 1983 when Prince was fired. He had over 250 employees working under his supervision. He testified that the city manager runs the City; he is the chief executive officer. He approves the hiring and firing of all city employees, except the city secretary, city attorney, and city judge. Owen admitted delegating authority for hiring and firing employees to the department heads and the superintendents. Specifically, he admitted delegating such authority to Luther Maxey as provided in the City Charter. However, Owen admitted that as city manager he

retained ultimate authority to approve any termination.

This evidence is legally and factually sufficient to support findings that the city manager was given final authority over personnel matters for the City by both the City Charter and the city council and that he had delegated that authority to Maxey. The city manager's conduct and that of Maxey was thus imputed to the governing body of the City. The evidence presented is therefore legally and factually sufficient to meet the test for awarding exemplary damages against the City. *See City of Gladewater,* 727 S.W.2d at 522–23. We overrule points two through six.

## DUE PROCESS

In its seventh point, the City of La Porte argues that the court erred in awarding exemplary damages because the award violates the due-process clauses of the United States and Texas Constitutions.

FOURTEENTH AMENDMENT

Texas procedure for awarding exemplary damages tracks the common-law method that has been approved by the Supreme Court. *Pacific Mutual Life Ins. Co. v. Haslip,* 499 U.S. 1, 111 S.Ct. 1032, 1042–43, 113 L.Ed.2d 1 (1991); *General Motors Corp. v. Saenz,* 829 S.W.2d 230, 241 (Tex. App.–Corpus Christi 1991, writ granted). Appellate courts in Texas have repeatedly approved the Texas procedure in the face of due-process challenges. *Saenz,* 829 S.W.2d at 241; *Bard v. Charles R. Myers Ins. Agency,* 811 S.W.2d 251, 263 (Tex. App.–San Antonio 1991), *rev'd on other grounds,* 839 S.W.2d 791 (Tex.1992); *State Farm Mut. Auto Ins. Co. v. Zubiate,* 808 S.W.2d 590, 602–05 (Tex.App.–El Paso 1991, *writ denied*); *also Glasscock v. Armstrong Cork Co.,* 946 F.2d 1085, 1097 (5th Cir.1991).

 Texas procedure for assessing exemplary damages involves properly instructing the jury regarding the circumstances under which exemplary damages may be awarded. *Saenz,* 829 S.W.2d at 241. If the jury finds under the applicable standards that exemplary damages should

be awarded, it then sets the amount. *Id.* If the defendant believes the amount is excessive, he may raise that issue in a motion for new trial. *Id.* If the motion is denied, further procedural protections are provided, including one appeal of right, one discretionary appeal to the Supreme Court of Texas, and a discretionary appeal to the Supreme Court of the United States. *Id.*

The Fifth Circuit in *Glasscock* found that the review of exemplary damage awards conducted by Texas courts contains several of the same features as the Alabama system reviewed in *Haslip.* *Glasscock,* 946 F.2d at 1097–98. In Texas, both the trial and appellate courts review exemplary damage awards to determine if they are reasonably proportioned to actual damages. *Id.* at 1098. Furthermore, the Texas Supreme Court has provided factors for the courts to use when conducting this evaluation. *Alamo Nat. Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex.1981). These factors are: "(1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of culpability of the wrongdoer, (4) the situation and sensibilities of the parties concerned, and (5) the extent to which the defendant's conduct offends the public sense of justice and propriety." *Id.* Review of the jury's decision by the trial and appellate courts using the *Kraus* standards assures that the award is reasonable and not the result of impermissible factors. *See id.* The jury is also limited in the amount it may properly award to that which will deter future abuses—the primary Texas policy justifying exemplary damages. *Saenz,* 829 S.W.2d at 241.

■ In the present case, the jury was properly instructed that exemplary damages could be awarded as a penalty or punishment, and as an example to others, if the City of La Porte's conduct was the result of "intentional, willful, or the result of grossly negligent conduct" that "shows an entire want of care to the rights of plaintiff." The instruction and question confined the jury's award to circumstances involving intentional, willful or grossly negligent conduct. We hold these limitations on the jury's discretion to award ex-

emplary damages comply with federal due-process standards. *See Haslip,* 499 U.S. at ——, 111 S.Ct. at 1042.

DUE PROCESS UNDER THE TEXAS CONSTITUTION

The cases addressing due process do not seem to distinguish between the federal and state constitutional provisions. However, due process under the Texas constitution can be satisfied through jury instructions alone. TEX. CONST. art. I, § 19; *see Commonwealth Lloyd's Ins. Co. v. Thomas,* 825 S.W.2d 135, 149 (Tex.App.–Dallas 1992, n.w.h.); *Transportation Ins. Co. v. Moriel,* 814 S.W.2d 144, 150 (Tex.App.–El Paso 1991, writ granted); *Zubiate* 808 S.W.2d at 604. We hold that the procedural safeguards discussed above comply with due-course-of-law guarantees in the Texas constitution. We overrule point seven.

REMITTITUR

The City argues in its eighth point that the court should have granted a remittitur on exemplary damages. After considering the evidence, the jury found that the act of discharging Prince was intentional, willful, or the result of grossly negligent conduct and assessed one-million dollars in exemplary damages.

A post-trial hearing in the form of a motion for new trial was held regarding the sufficiency of the evidence supporting the award and whether the appropriate legal standards were applied. At this hearing, the trial court had the power to order a new trial or a remittitur. *See Saenz,* 829 S.W.2d at 241. After hearing the arguments, the court denied the motion.

■ A remittitur is proper only when there is factually insufficient evidence to support the jury's verdict. *Larson v. Cactus Utility Co.,* 730 S.W.2d 640, 641 (Tex. 1987). If the evidence is factually sufficient to support a jury award of any amount, the court has no authority to suggest a remittitur, no matter how manifestly unjust or shocking to the conscience of the court the amount of the award may be. *National Fire Ins. v. Dominguez,* 793 S.W.2d 66, 73 (Tex.App.–El Paso 1990, writ denied).

We have reviewed the legal and factual sufficiency of the evidence supporting exemplary damages and found it sufficient under the legal standards applying to an award of exemplary damages. *See Kraus,* 616 S.W.2d at 910. The first of the five factors enumerated in *Kraus* is the nature of the wrong. *Id.* Here, the jury found that the City fired Prince because he filed a workers' compensation claim. An employee has a protected legal right to file a claim when he is injured in the work place. *See* TEX.REV.CIV.STAT ANN. art. 8307c. By firing Prince for exercising this right, the City likewise tended to "chill" the exercise of the same rights by its other employees.

Next, the court must evaluate the character of the conduct involved and the degree of culpability of the wrongdoer. *Kraus,* 616 S.W.2d at 910. The jury found that the City's act of firing Prince was intentional, willful, or the result of grossly negligent conduct that showed an entire want of care for his rights. Apparently, this action was taken in furtherance of an unwritten policy to discharge employees for exercising their rights to seek statutory benefits for on-the-job injuries.

Additionally, the court must examine the situation and sensibilities of the parties concerned. *Id.* The City's unwritten policy forced Prince to choose between his job and his statutory right to pursue compensation benefits, a particularly anguished choice for any employee. An injured employee is particularly vulnerable to threats of the loss of his job. On the other hand, the City faced no such hard choice. Here, the imbalance between the parties was significantly in favor of the City and against Prince.

Finally, the court must also evaluate the extent to which such conduct offends a public sense of justice and propriety. *Id.* Employees lose their common-law right of action against an employer for on-the-job injuries in return for the fixed statutory benefits under the workers' compensation statutes. For a municipality to act intentionally, maliciously, and wilfully to destroy or chill the exercise of the only right available to its injured employees deserves severe condemnation and punishment. Moreover, leaving such action unpunished by punitive damages would only encourage other employers to do likewise. Employees are entitled to the peace of mind of knowing that if they are injured while at work they can rely on the benefits provided by the workers' compensation laws without having to risk their job for exercising that right. Thus, the factors to determine whether exemplary damages are reasonably proportionate to actual damages have passed this court's scrutiny, and we overrule point eight.

## EXCLUSION OF EVIDENCE

In its ninth point, the City contends that the court erred in excluding the testimony of Mary Davis and Linda Wilson. Prince asked in his interrogatories to the City: "Please state the name, address, and telephone number of any person or persons who have knowledge of relevant facts which in any way pertain to the subject matter made the basis of this lawsuit." The City answered by stating: "Ms. Mary Davis; Mr. Luther Maxey; Mr. Walter Barnes; Ms. Linda Wilson. Inasmuch as each of the above named persons is an employee of the Defendant, Defendant OBJECTS to furnishing their addresses and telephone numbers; any communication to them should be made through Defendant's attorney of record."

Sometime after the interrogatory was answered, Mary Davis and Linda Wilson left the City's employment, but the City never supplemented its response to the question. At trial, the City offered into evidence the deposition testimony of Davis and Wilson. Prince objected because the addresses and telephone numbers of these witnesses were never provided. The trial court sustained Prince's objections and excluded their deposition testimony.

A party has an affirmative duty to supplement discovery responses if it knows that the answer was incomplete when made, is no longer true, or when the failure to amend would be misleading. *See* TEX.R.CIV.P. 215(5); *Boothe v. Hausler,* 766

S.W.2d 788, 789 (Tex.1989). When Davis and Wilson ceased employment with the City, the interrogatory answer was incomplete and no longer true. Thus, the City had a duty to supplement its answer with Davis' and Wilson's addresses and telephone numbers.

■ Failure to supplement discovery results in the loss of the opportunity to offer the witness' testimony. TEX.R.CIV.P. 215(5). The sanction is automatic. *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 395 (Tex.1989). By excluding the testimony of those witnesses whose identities or locations are not revealed in response to discovery requests, Rule 215(5) promotes full discovery and deters litigants from violating discovery rules. *Clark v. Trailways, Inc.*, 774 S.W.2d 644, 646 (Tex.1989).

■ The party offering the evidence has the burden of showing good cause for failure to supplement its discovery responses. *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297, 298 (Tex.1986). The determination of good cause, which is within the discretion of the court, can only be set aside if that discretion is abused. *Id.* The trial court's discretion in determining good cause is limited to situations where one could not, in good faith and due diligence, respond or when difficult or impossible circumstances prevent one from supplementing discovery. *Foster v. Cunningham*, 825 S.W.2d 806, 808 (Tex.App.–Fort Worth 1992, writ granted). Even though a witness has been fully deposed, and only his deposition testimony will be offered at trial, that does not show good cause for admitting the evidence when the witness was not properly identified in response to discovery. *Sharp v. Broadway Nat. Bank*, 784 S.W.2d 669, 671 (Tex.1990).

The City offered no reason why it could not have supplemented its response. Thus, it did not establish good cause, and the court did not abuse its discretion in sustaining Prince's objection. The ninth point is overruled.

### PREJUDGMENT INTEREST

■ In its tenth point the City argues that the court erred in awarding prejudg-

ment interest. Prejudgment interest is additional damages for the loss of use of money due as damages during the period between the accrual of the claim and the date of judgment. *LaCoure v. LaCoure*, 820 S.W.2d 228, 237 (Tex.App.–El Paso 1992, writ denied). A prevailing plaintiff is entitled to recover prejudgment interest as a matter of law on damages that have accrued by the time of judgment. *Id.; Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 552–55 (Tex.1985). The City contends, however, that *Cavnar* does not apply to "non-personal injury, economic damages" and thus does not apply in this case. This contention is incorrect. The rationale in *Cavnar* extends to all types of cases. *City of Houston v. Wolfe*, 712 S.W.2d 228, 230 (Tex.App.–Houston [14th Dist.] 1986, writ ref'd). Thus, prejudgment interest was correctly awarded in this case. We overrule point ten and affirm the judgment.

VANCE, J., files a concurring and dissenting opinion.

VANCE, Justice, concurring and dissenting.

I concur in that part of the judgment awarding actual damages. *See Barfield v. City of La Porte*, 849 S.W.2d 842 (Tex. App.–Texarkana, 1993). Because I cannot find a waiver of governmental immunity allowing the exemplary damages, I dissent from the majority's affirming that part of the judgment against the city.

Waiver of sovereign immunity is a matter addressed to the legislature. *Durhart v. State*, 610 S.W.2d 740, 741 (Tex.1980). Any legislative waiver of governmental immunity must be clear and unambiguous. *Id.* at 742.

The functions of a municipal entity fall into one of two categories—governmental or proprietary. *City of Houston v. Southwest Concrete Const.*, 835 S.W.2d 728, 730 (Tex.App.—Houston [14th Dist.] 1992, writ denied). "Governmental functions" are those functions that the municipality carries out as an arm of the State for the purpose of serving the general public. *Id.*

A municipality acting in a governmental function is afforded the State's sovereign immunity except to the extent that the State has waived that immunity under the Tort Claims Act. *Id.;* TEX.CIV.PRAC. & REM. CODE ANN. § 101.001–101.109 (Vernon 1986 & Supp.1993). On the other hand, municipalities have long been liable for torts committed while engaged in a proprietary function. *Turvey v. City of Houston,* 602 S.W.2d 517, 519 (Tex.1980); *City of Fort Worth v. George,* 108 S.W.2d 929, 931 (Tex. Civ.App.–Fort Worth 1937, writ ref'd).

In adopting the Tort Claims Act, the legislature preserved this distinction. Act of May 22, 1969, 61st Leg., R.S., ch. 292, § 18(a), 1969 Tex.Gen.Laws 878, *repealed by* Act of June 16, 1987, 70th Leg., 1st C.S., ch. 2, § 3.13, 1987 Tex.Gen.Laws 50. And, using a constitutional grant of authority, it has adopted a non-exclusive list of functions that it deemed to be governmental in nature and another non-exclusive list that it deemed proprietary. TEX. CONST. art. 11, § 13; TEX.CIV.PRAC. & REM.CODE ANN. § 101.0215(a), (b) (Vernon Supp.1993). The liability for acts committed while performing governmental functions is that allowed by the Act. TEX.CIV.PRAC. & REM.CODE ANN. § 101.025(a) (Vernon 1986). The Act does not authorize recovery of exemplary damages. *Id.* § 101.024.

Operation of a sewer system is a governmental function. *See id.* § 101.0215(a)(9). Furnishing workers' compensation coverage is a governmental function. *Wallace v. City of Midland,* 836 S.W.2d 641, 643 (Tex.App.–El Paso 1992, writ denied). Hiring and firing of city employees is a governmental function. *Town of South Padre Island v. Jacobs,* 736 S.W.2d 134, 144 (Tex. App.–Corpus Christi 1987, writ denied) (on rehearing); *City of Dallas v. Moreau,* 718 S.W.2d 776, 779 (Tex.App.–Corpus Christi 1986, writ ref'd n.r.e.). Prince was employed by the City as a sewer lift-station operator; he sued after he was fired for filing a worker's compensation claim. Every aspect of his claim involves a governmental function.

A claim for exemplary damages may not be brought unless permission to sue for exemplary damages is specifically and expressly given. *Board of Regents v. Denton Const. Co.,* 652 S.W.2d 588, 592 (Tex. App.–Fort Worth 1983, writ ref'd n.r.e.). Can we find an express, unambiguous waiver of immunity that renders the City of La Porte liable for exemplary damages?

The workers' compensation statute does not waive immunity for exemplary damages—its applicability here is (1) to require that the city cover its employees with workers' compensation coverage, either through insurance, self-insurance, or an interlocal agreement providing self-insurance and (2) to create the cause of action for wrongful discharge that allowed Prince to recover his actual damages. TEX.REV.CIV.STAT.ANN. arts. 8307c, 8309h § 2(a) (Vernon Supp. 1993). In fact, section 3(e) of article 8309(h) provides that the entire article is subject to the provisions of the Tort Claims Act. *Id.* art. 8309(h), § 3(e). It provides:

Nothing in this Act or the Texas Worker's Compensation Act (S.B. No. 1, Acts of the 71st Legislature, 2nd Called Session, 1989) shall be construed to authorize causes of action or damages against a political subdivision or employee of a political subdivision beyond the actions and damages authorized by the Texas Tort Claims Act (Chapter 101, Civil Practice and Remedies Code).

*Id.* The Tort Claims Act does not authorize recovery of exemplary damages. TEX. CIV.PRAC. & REM.CODE ANN. § 101.024.

Section 101.028 of the Civil Practice and Remedies Code has been held not to be a waiver of governmental immunity in tort suits, as opposed to administrative claims for worker's compensation. *Barfield,* 849 S.W.2d at 844 (citing *Bridges v. Texas A & M Univ. System,* 790 S.W.2d 831, 834 (Tex. App.–Houston [14th Dist.] 1990, no writ)). This section, providing only that a municipality that does elect to provide workers' compensation coverage for its employees shall "enjoy ... privileges and immunities ... of private individuals and corporations," cannot be said to waive immunity in a governmental-function situation. TEX. CIV.PRAC. & REM.CODE ANN. § 101.028 (Vernon 1986). I read this provision as grant-

ing municipalities certain rights, not as taking any away. It should not be read to mean that such a municipality stands on the same footing as private individuals and corporations *in all respects*. Further, this interpretation is reinforced by Section 101.-024, a part of the same subchapter of the Tort Claims Act, that specifically disclaims any waiver of immunity as to exemplary damages. *Id.* § 101.024 (Vernon 1986).[1]

Finally, *City of Gladewater v. Pike* cannot be read to waive immunity in a governmental-function situation. *City of Gladewater v. Pike*, 727 S.W.2d 514 (Tex.1987). The opinion in *Pike* clearly specifies that the city's liability arose out of a proprietary function—operation and maintenance of a cemetery.[2] *Id.* at 519. At most, the case stands for the proposition that, even in a proprietary-function case, a city is not liable for exemplary damages unless the plaintiff can show (1) that the city's agent acted with a culpable state of mind, *i.e.*, that the actor engaged in willful, wanton, malicious or grossly negligent conduct, and (2) that the culpable acts were expressly authorized by the municipal government or done in the bona fide pursuit of general authority to act for the municipality on the subject to which they relate. *Id.* at 522–23; *City of Odessa v. Bell*, 787 S.W.2d 525, 528 (Tex.App.–El Paso 1990, no writ). *Pike* simply does not speak to governmental-function liability.

Because I believe that the majority has found a waiver of governmental immunity where none exists, I would reform the judgment to eliminate the award of exemplary damages and, as reformed, affirm it.

---

1. At least one Court of Appeals believes that, because the Legislature has now defined certain functions as "proprietary" in the Tort Claims Act, section 101.024 of the Act precludes the recovery of exemplary damages "regardless of whether the function was governmental or proprietary...." *City of Odessa v. Bell*, 787 S.W.2d 525, 527–28 (Tex.App.–El Paso 1990, no writ); Tex.Civ.Prac. & Rem.Code Ann. §§ 101.0215(b), 101.024.

2. The Legislature has now classified the operation of cemeteries and cemetery care as governmental functions. Tex.Civ.Prac. & Rem.Code Ann. § 101.0215(a)(5).