Larry STRAHAN, Jr., et al., Appellants,

v.

Louis C. DAVIS, et al., Appellees.

No. 10–93–238–CV.

Court of Appeals of Texas,
Waco.

March 23, 1994.

Joe R. Greenhill, Jr. and Mahon B. Garry, Jr., Wright and Greenhill, P.C., Austin, for appellants.

Josef F. Buenker, Bristow Hackerman Wilson & Peterson, Houston, Roger Knight, Jr., Roger Knight, Jr., Inc., Madisonville, for appellees.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

In this automobile accident case, we must decide questions of (1) sufficiency of the evidence to support findings of proximate cause, future medical expenses, lost earning capacity, future physical pain and mental anguish, and gross negligence; (2) improper jury argument; .(3) whether exemplary damages were properly awarded against a party when no finding was made against that party; and (4) whether awards of exemplary damages offend notions of due process. We will reform the judgment because we find no evidence to support a finding of future pain and mental anguish for one of the plaintiffs. As reformed, we will affirm the judgment.

At about 7:00 p.m. on March 2, 1992, Louis Davis was driving on State Highway 21 behind a pickup pulling a homemade trailer. His wife, Helen Davis, was his passenger. The pickup was driven by Larry Strahan, Jr., an employee of Diversified Oil Field Service International, Inc. (Diversified). When the pickup and trailer slowed to turn left, Mr.

Davis stopped but was hit from behind by a vehicle driven by Melody Graham, who said that another vehicle hit hers causing it to strike the Davises. The identity of the driver whose vehicle hit Graham is not known because he or she did not stop. The Davises sued Diversified, Strahan, and Graham for their injuries and damages. They also sued Texas Farm Bureau Mutual Insurance Company (Farm Bureau), their own insurance carrier, alleging that Diversified, Strahan, and Graham were uninsured or underinsured motorists. Graham filed a cross-action against Strahan and Diversified, alleging that the collision was solely caused by Strahan. Strahan and Diversified alleged that the collision was solely caused by Graham or by the unknown driver. Prior to trial, Farm Bureau agreed to be bound by the jury's verdict and did not participate.

The jury found that: (1) Strahan's negligence proximately caused the incident; (2) Strahan was grossly negligent; (3) Mrs. Davis was damaged in the amount of $240,003.47, including $87,000 for future medical expenses; (4) Mr. Davis was damaged in the amount of $10,000—$5,000 for past pain and mental anguish and $5,000 for future pain and mental anguish; and (5) $500,000 should be assessed against Strahan for exemplary damages. The jury failed to find that Graham's or the unknown driver's negligence proximately caused the incident. After overruling Strahan's and Diversified's motions for judgment notwithstanding the verdict, the court entered a judgment against Strahan and Diversified, jointly and severally, for Mrs. Davis' damages, Mr. Davis' damages, the exemplary damages, and pre-judgment interest. The court also ordered that the Davises recover nothing from Graham and the Farm Bureau.[1] Strahan and Diversified, who will be referred to collectively as Appellants, appealed after the court overruled their motions for new trial.

1. Farm Bureau filed a brief on appeal. Because the court exonerated the company, we have not considered its brief.

2. We use the terminology suggested in William Powers, Jr. & Jack Ratliff, *Another Look at "No*

## SUFFICIENCY OF THE EVIDENCE

Appellants' first two points complain that the evidence is legally and factually insufficient to support the jury's finding that Strahan's negligence proximately caused the collision. Points five through ten make the same complaints about the findings of (a) Mrs. Davis' future medical expenses of $87,000, (b) her lost earning capacity of $7,500, and (c) Mr. Davis' future physical pain and mental anguish. Points two and three assert that the evidence is legally and factually insufficient to support the finding that Strahan was grossly negligent. The Davises had the burden of proof on each of these findings.

STANDARD OF REVIEW

When the complaining party raises a "no-evidence" point[2] challenging the legal sufficiency of the evidence to support a finding that favors the party who had the burden of proof on that finding, the reviewing court must sustain the finding if, considering only that evidence and the inferences which support the finding in the light most favorable to the finding and disregarding evidence and inferences to the contrary, any probative evidence supports it. *Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex.1993). If there is more than a scintilla of evidence to support the finding, the no-evidence challenge fails. *Id.* "When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of [the fact's] existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). A no-evidence point can only be sustained when the record reveals one of the following: (1) a complete absence of evidence of a vital fact; (2) rules of law or rules of evidence bar us from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *See Juliette Fowler Homes, Inc.*

*Evidence" and "Insufficient Evidence,"* 69 TEX. L.REV. 515, 517–19 (1991); *see also Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.*, 766 S.W.2d 264, 275–76 (Tex.App.—Amarillo 1988, writ denied).

*v. Welch Assoc., Inc.*, 793 S.W.2d 660, 666 n. 9 (Tex.1990).

■ If a "no evidence" point is sustained and the proper procedural steps have been taken, the finding under attack may be disregarded entirely. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

■ In reviewing an "insufficient-evidence" point [3] challenging the factual sufficiency of the evidence to support a finding that favors the party who had the burden of proof on that finding, the reviewing court may set aside the finding only if a review of all the evidence, both for and against the finding, demonstrates that the finding is clearly wrong and manifestly unjust. *Id.* Reversal could occur because the finding was based on weak or insufficient evidence or because the proponent's proof, although adequate if taken alone, is overwhelmed by the opponent's contrary proof. William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 TEX.L.REV. 515, 519 n. 11 (1991).

PROXIMATE CAUSE

■ Appellants' brief concedes that Strahan "was negligent in not having at least two lights on the trailer at the time of the accident." They contend, however, that the evidence is insufficient to support a finding that his negligence was a cause of the collision. In support of this contention, they assert that the "evidence, when taken as a whole, clearly points to only one conclusion—the negligence of the hit and run motorist is the sole cause of this accident, and the presence or absence of lights on Strahan's trailer is entirely incidental to the occurrence." We disagree.

■ Causation is a matter that is a particularly apt question for a jury. *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 756 (Tex. 1975). In Texas, proximate cause consists of two concepts: (1) cause in fact and (2) foreseeability. *Id.* at 755. Causation may be established by circumstantial evidence. *Id.* The evidence shows a string of vehicles making "sudden stops" while following an unlit

trailer. Considering only the evidence and the inferences which support the finding in the light most favorable to the finding and disregarding evidence and inferences to the contrary, we believe that more than a scintilla of probative evidence supports the finding that the admitted negligence in pulling the trailer without proper lighting was a proximate cause of the Davises' injuries. *See Reyna*, 865 S.W.2d at 928. Reviewing all the evidence, both for and against the finding, we cannot say that the evidence is so weak or insufficient as to demonstrate that the finding is clearly wrong and manifestly unjust. *See Garza*, 395 S.W.2d at 823. We overrule points one and two.

FUTURE MEDICAL EXPENSES

■ Appellants' points five and six attack the jury's finding that Mrs. Davis will incur $87,000 in medical expenses in the future. They acknowledge that the amount to be awarded for future medical expenses is within the jury's discretion but, citing *Harvey v. Culpepper*, 801 S.W.2d 596, 599 (Tex.App.— Corpus Christi 1990, no writ), say that there must be evidence that the expenses are "reasonably probable."

■ An award of future medical expenses is primarily a matter for the jury. *Hughett v. Dwyre*, 624 S.W.2d 401, 405 (Tex. App.—Amarillo 1981, writ ref'd n.r.e.). No precise evidence is required. *Id.* Such an award may be based on the nature of the injuries, the medical care rendered in the past, and the condition of the injured party at the time of trial. *Id.* Testimony of a "reasonable medical probability" by a medical expert is not a prerequisite to a recovery for future medical expenses. *Id.* If there is any probative evidence which supports the jury's finding of future medical expenses, then the award must be upheld. *Id.* at 406.

Dr. L.W. Coleman, Jr., a board certified orthopedic surgeon, testified that Mrs. Davis had reinjured her back at the level at which she had had a laminectomy in the mid–1970's. Although he had not seen her since about three months after the incident, when he referred her to another doctor because she

3. See footnote 2.

was still having pain, he said that most patients get better in three to six months, and "if they go longer than that, usually they're—they're headed for another procedure...." He said that she is "potentially at risk for more surgery" and that the cost would be approximately $3,000 for professional fees and a minimum of $10–15,000 for hospital expenses.

Dr. Nathan Colwell, a diagnostic radiologist, testified that he had reviewed Dr. Coleman's records and deposition testimony concerning Mrs. Davis. His opinion was that the collision exacerbated the low-back problems left over from her earlier surgery, that she was experiencing pain and discomfort, and that she was at risk for future surgery. He said that, if Mrs. Davis were to have surgery in the future, the least amount of expense would be $20–25,000 and the most would be $200–300,000. Thus, the jury's award is within the parameters outlined by the medical professionals.

Mrs. Davis testified that she was a high-school teacher at Madisonville High School. She said that they were hit by Graham's vehicle "pretty hard" and that after the collision her back and knee hurt. She said that, although she had been free of pain before the collision, she began having the same kind of pain that had been associated with her earlier back problem; that from the injury until the time of trial, she was never free of the pain; and that sometimes it was so severe as to bring tears. She said she was using ice every day to help alleviate the pain.

Considering only the evidence and the inferences which support the finding of future medical expenses in the light most favorable to the finding and disregarding evidence and inferences to the contrary, we believe that more than a scintilla of probative evidence supports the jury's determination that Mrs. Davis will incur future medical expenses of $87,000. *See Reyna*, 865 S.W.2d at 928. Reviewing all the evidence, both for and against the finding, we cannot say that the evidence is so weak or insufficient as to demonstrate that this finding is clearly wrong and manifestly unjust. *See Garza*, 395 S.W.2d at 823. We overrule points five and six.

LOST EARNING CAPACITY

■ Mrs. Davis had been a teacher in the Madisonville schools since 1959. As stated, she testified that she was suffering constant back pain and that standing for a long time and walking up stairs caused her problems. She said that she had been able to arrange physical therapy sessions at the end of the school day or around her class schedule, but the therapy required her to leave the school. She had missed two to four days from school as a result of the incident. The jury found that $7,500 would compensate Mrs. Davis for lost earning capacity. Points seven and eight attack the evidentiary support for that finding.

■ Lost earning capacity is left to the discretion of the jury. *Tri–State Motor Transit Co. v. Nicar*, 765 S.W.2d 486, 492 (Tex.App.—Houston [14th Dist.] 1989, no writ) (citing *McIver v. Gloria*, 140 Tex. 566, 169 S.W.2d 710, 712 (1943)). Recovery of lost earning capacity does not require a showing of past lost earnings. *Id.*

The jury was entitled to consider the medical testimony concerning future surgery, in addition to Mrs. Davis' testimony about her ailments, in arriving at its decision about lost earning capacity. Again, considering only the evidence and the inferences which support the finding of lost earning capacity in the light most favorable to the finding and disregarding evidence and inferences to the contrary, we believe that more than a scintilla of probative evidence supports the jury's determination that Mrs. Davis has and will incur lost earning capacity of $7,500. *See Reyna*, 865 S.W.2d at 928. Reviewing all the evidence, both for and against the finding, we cannot say that the evidence is so weak or insufficient as to demonstrate that the finding of the amount of damages for lost earning capacity is clearly wrong and manifestly unjust. *See Garza*, 395 S.W.2d at 823. We overrule points seven and eight.

FUTURE PHYSICAL PAIN AND MENTAL ANGUISH

■ Question number five asked the jury to determine the various amounts of damages that Mr. Davis had or would sustain. "Element b" asked about "physical pain and mental anguish in the future," and the jury an-

swered $5,000. Appellants' points nine and ten argue that the evidence is legally and factually insufficient to support that finding. They contend that no evidence supports an award for mental anguish, so the entire amount that the jury awarded must be attributed to pain in the future.

Mr. Davis was eighty years of age at the time of trial. He testified that his "face hit up against the side of that car on the left side." He said that he "didn't feel it until I got up the next morning," when his leg was "popping and hurting." He said that he had surgery for a detached retina after he began seeing "little red specks" and that, as of the time of trial, the eye "itches." He replied, "No. I don't," when asked whether he had any other problems that were caused by the collision.

■ Although the damages to be awarded for physical pain in the future are necessarily speculative and it is peculiarly within the province of the jury to set the amount of such damages, there must be some objective evidence that an injury will continue to adversely affect the party claiming such damages. *Hicks v. Ricardo*, 834 S.W.2d 587, 591 (Tex.App.—Houston [1st Dist.] 1992, no writ).

We agree with Appellants that the record is devoid of any evidence to support an award of future mental anguish to Mr. Davis. Although he argues that evidence that his knee was "popping" while he testified and that his eye was itching is sufficient to support an award for pain in the future, we cannot agree. We hold that there is a complete absence of evidence to support the jury's award of future pain and mental anguish to Mr. Davis. *See Juliette Fowler Homes*, 793 S.W.2d at 666 n. 9. Consequently, because the proper procedural step was taken by Appellants by objecting to the inclusion of such damages in the judgment in their motion for new trial, the jury's finding will be disregarded, and the judgment will be reformed to delete the $5,000 award for such damages. *See Garza*, 395 S.W.2d at 823.

GROSS NEGLIGENCE

■ By points three and four Appellants assert that no evidence or, alternatively, in-

sufficient evidence exists to support the jury's finding that Strahan was grossly negligent. In their original brief, Appellants cite a single case, *Cambridge Mutual Fire Ins. Co. v. Shoemake*, 403 S.W.2d 858 (Tex.Civ. App.—Dallas 1966, no writ), for the proposition that "if a fact-finder can equally infer either the presence or absence of a fact from the facts presented, the party with the burden of proof has failed to carry that burden, and the question must be resolved against him." Thus, they say that, because there is no evidence that a check of the trailer's lights on the morning in question would have revealed that the light was not working and because the lights could have failed during the day, Strahan's actions do not constitute the kind of disregard that rises to the level of gross negligence.

In a supplemental brief, Appellants assert that *Transportation Ins. Co. v. Moriel*, 37 Tex.Sup.Ct.J. 450, 1994 WL 27030 (February 2, 1994), requires that we set aside the finding of gross negligence. Although *Moriel* was a bad-faith insurance case, the decision "represents a substantial clarification of the Texas gross negligence standard and 'no evidence' review of gross negligence findings." *Id.* at 462. We will apply the principles enunciated in *Moriel* as they apply to a gross negligence finding in this ordinary tort context.

The Civil Practice and Remedies Code defines gross negligence as "more than momentary thoughtlessness, inadvertence, or error of judgment. It means such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected." TEX.CIV.PRAC. & REM.CODE ANN. § 41.001(5) (Vernon Supp.1994). "Gross negligence thus involves two components: (1) the defendant's act or omission, and (2) the defendant's mental state." *Moriel*, 37 Tex.Sup.Ct.J. at 458. It "differs from ordinary negligence with respect to both elements—the defendant must be 'consciously indifferent' [to the rights, safety, or welfare of the person affected] and his or her conduct must 'create an extreme degree of risk.'" *Id.* "[T]he test for gross negligence 'contains both an objective and a subjective com-

ponent.'" *Id.* Objectively, the conduct in question "must involve an 'extreme degree of risk,' a threshold significantly higher than the objective 'reasonable person' test for [ordinary] negligence." *Id.* Subjectively, the defendant must have had "actual awareness" of the extreme risk created by the conduct in question. *Id.*

■ The objective component—extreme risk of harm—is a function of both the magnitude and the probability of the anticipated injury to the plaintiff. *Id.* at 459. It is not satisfied by minor harm or a remote possibility of injury. *Id.* The test is "the likelihood of serious injury." *Id.* "Only if the defendant's act or omission is unjustified and likely to cause serious harm can it be grossly negligent." *Id.*

■ The subjective component—the requirement of conscious indifference—requires proof, direct or circumstantial, that the defendant had actual subjective knowledge of an extreme risk of serious harm. *Id.* Although the subjective component is separate, it is related to the objective component because a test of the defendant's mental state necessarily involves awareness of the risk that his or her conduct creates. *Id.*

In evaluating the legal sufficiency for a finding of gross negligence, we ask "whether the proffered evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *See id.* at 461.

Turning first to an examination of the objective component, we look at the events and circumstances from Strahan's viewpoint at the time the events occurred and ask: Is there evidence that his conduct created an extreme degree of risk? Strahan did not attempt to justify his action, so justification is not an issue. *See id.* at 459. The evidence shows that he was pulling a trailer that had no rear lights, while it was dark, on a public highway. The probability that someone behind his trailer, like the Davises, would be injured was high rather than remote. The harm that someone like the Davises might suffer was serious bodily injury rather than minor harm. That is to say, "the likelihood

of serious injury" was great. *See id.* Thus, we conclude that there is evidence that Strahan's conduct in pulling an unlit trailer created an extreme degree of risk. *See id.* at 458–59.

In examining the subjective component, we look at the evidence, direct and circumstantial, to determine whether Strahan had actual subjective knowledge of the extreme risk of serious harm that he created. The Davises contend the evidence shows that Strahan knew that his conduct created an extreme degree of risk. They point to evidence that: (1) he was trained to check the trailer's lights; (2) Diversified had a policy that the lights would be checked every time the trailer left its yard; (3) Strahan knew that driving without trailer lights was dangerous; (4) he knew that one taillight was out; (5) he had several opportunities to check the lights; and (6) a check of the lights was a quick and simple task. Strahan was asked if he cared about "whether you have one taillight, or two, or no taillights. [You] didn't even look to see what you had on the back of it?" He answered, "No." This evidence is more than a scintilla of direct evidence that Strahan was consciously indifferent to the risks that his pulling an unlit trailer created. *See id.* at 461.

Because we have found that there is more than a scintilla of evidence to support both the objective and subjective components of gross negligence, we find that the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions about whether Strahan was grossly negligent. Thus, we overrule point three. *See id.; Reyna,* 865 S.W.2d at 928. Having likewise examined all of the evidence on both components of gross negligence, we cannot say that the evidence supporting the finding is so weak or insufficient that the finding is clearly wrong and manifestly unjust. *See Garza,* 395 S.W.2d at 823. We likewise overrule point four.

Because the procedural standards of bifurcated trials of the amounts of punitive damages and detailing of the evidence in support

of the amount [4] of exemplary damages using the *Kraus* factors were made prospective in application by *Moriel,* we do not address those issues. *See Moriel,* 37 Tex.Sup.Ct.J. at 463–66.

## JURY ARGUMENT

██ Appellants' point twelve asserts that the Davises' counsel injected insurance into the case during the final argument and that the court erred in failing to grant a mistrial. Counsel said:

I don't know, and we don't know, or we're not supposed to know in this case who has what, but I can assure you of one thing, you don't have to worry about this young man having to pay his thousand dollar fine. You don't have to worry about him paying any thousand dollar fine.

Appellants say that "the quoted language is clearly an attempt to inform the jury of insurance coverage, and to influence the jury to consider matters outside the evidence in assessing damages in this case."

As Appellants' brief predicted, the Davises say that Appellants' counsel invited the argument when he told the jury that the unknown driver may not have had insurance. The Davises also say that the complaint is not properly preserved because Appellants did not make their objection specific and did not request a curative instruction. Finally, they say that the error, if any, was harmless.

██ First, we observe that the Davises' counsel did not specifically mention insurance. Next, not every mention of insurance is reversible error. *Dennis v. Hulse,* 362 S.W.2d 308, 309 (Tex.1962). A party complaining of improper jury argument must show: (1) that an error occurred; (2) that the argument was not invited or provoked; (3) that the objection was preserved; and (4) that the argument was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge. *Standard Fire Insurance Co. v. Reese,* 584 S.W.2d 835, 839 (Tex.1979). Instances in

which jury argument results in incurable harm are rare. *Id.* A reviewing court must examine the claimed improper argument in light of the whole case, beginning with the voir dire and ending with closing argument. *Id.* at 840.

From a review of the entire record, given the facts that the argument did not specifically mention insurance and that the court admonished counsel to "move on" to another topic, we believe that a reversal of the judgment based on improper jury argument is unnecessary. *See Dennis,* 362 S.W.2d at 309. We overrule point twelve.

## AWARD OF EXEMPLARY DAMAGES AGAINST DIVERSIFIED

██ Appellants' eleventh point attacks the judgment's award of the exemplary damages against Diversified because the Davises failed to request a jury question and obtained no finding that would support that part of the judgment. Their argument points to section 41.005 of the Civil Practice and Remedies Code, which provides that "each defendant is liable only for the amount of the award made against that defendant." *See* TEX.CIV.PRAC. & REM.CODE ANN. § 41.005 (Vernon Supp.1994). Thus, they contend that the Davises have waived their right to recover exemplary damages against Diversified. The Davises counter that this argument was never made to the trial court. The court rendered a judgment for the exemplary damages against Strahan and Diversified, jointly and severally. Assuming, without deciding, that no jury finding entitled the Davises to exemplary damages against Diversified, the record reveals that Diversified did not seek a modification of the judgment, did not object to the provision in its motion for new trial, and did not otherwise call the court's attention to any error in that part of the judgment.

██ Complaints on appeal about a judgment must have been brought to the trial court's attention in some manner. *Metromedia Long Distance, Inc. v. Hughes,* 810

---

4. Further, because it refers to the *"Kraus* factors," the *Moriel* opinion appears to require us to detail the evidence only when a point of error attacks the finding of the *amount* of exemplary damages and not when the point attacks only the

finding of gross negligence. *See Transportation Insurance Co. v. Moriel,* 37 Tex.Sup.Ct.J. 450, 466 (February 2, 1994); *Alamo Nat'l Bank v. Kraus,* 616 S.W.2d 908 (Tex.1981).

S.W.2d 494, 499 (Tex.App.—San Antonio 1991, writ denied). Because Diversified did not preserve its complaint about the judgment awarding exemplary damages against it, we hold that it has waived the complaint and overrule point eleven. *See id.*

## DUE PROCESS

Appellants assert in point thirteen that the award of exemplary damages violates the due-process clauses of the United States and Texas Constitutions, another contention not raised in the trial court. Although we believe that the point has been waived, we address it because we have adequately addressed it recently in another opinion. *See City of La Porte v. Prince*, 851 S.W.2d 876, 882–83 (Tex.App.—Waco 1993, writ granted). Based on our decision in *Prince*, we overrule point thirteen. *See id.* We note, however, that the United States Supreme Court has again granted certiorari on the federal issue in *Oberg v. Honda Motor Co.*, 316 Or. 263, 851 P.2d 1084 (1993), *cert. granted*, —— U.S. ——, 114 S.Ct. 751, 127 L.Ed.2d 69 (1994).

## CONCLUSION

Because we have sustained Appellants' no-evidence point concerning the jury's finding and award of damages to Mr. Davis for future pain and mental anguish and will disregard the finding, we reform that part of the judgment awarding actual damages to Mr. Davis and award him the sum of $5,000 against Appellants, jointly and severally, as actual damages. We further reform the judgment to provide for prejudgment interest of $28,796.30. Having overruled Appellants' remaining points of error, the judgment as reformed is affirmed.